CHARLES OSBORN, Appellant, v. WESLEY WOOD, Respondent.

Kansas City Court of Appeals, May 6, 1907.

1. PARTNERSHIP: Dissolution: Notice: Bills and Notes: Evidence. After a dissolution of a partnership without notice one partner may issue a note in settlement of a partnership transaction, but after notice of the dissolution he has no such authority; and evidence relating to notice is held sufficient to send the question to the jury.

2. ———: ———: ———: ———: Instruction. An instruction in reference to defendant's action in regard to other notes raising no presumption that his name was signed by authority to the note in suit, is held proper.

Appeal from Daviess Circuit Court.—*Hon. Joshua W. Alexander,* Judge.

AFFIRMED.

B. W. Hurst, O. N. Gibson and J. C. Wilson for appellant.

(1) What was the apparent and actual scope of Ogden's authority under the partnership? Appellant did not rely upon this presumption alone. The record conclusively shows that Ogden possessed this power by the very terms of the partnership agreement. Respondent's testimony is clear and circumstantial on this point. (2) Liability must be conceded, therefore, unless it can be inferred that the partnership terminated before this note was given, and that appellant had knowledge or notice of that fact. (3) Was notice of dissolution brought home to appellant prior to his acceptance of the note in question? It is admitted that no notice of dissolution was ever given to any one. Respondent says: "I did not know I had to, I just supposed that when I moved on the farm and quit the business, why, it was settled." (4) Respondent's instruction numbered 3 unfairly submitted to the jury the question of agency.

A. G. Knight for respondent.

(1) Appellant's first point is that there was no evidence of the dissolution of the partnership, and no evidence that plaintiff had notice or knowledge of the dissolution of such partnership. The first of the above contentions is amply answered by plaintiff's instruction numbered two asked by him and given by the court. 22 Am. and Eng. Ency. Law (2 Ed.), 204; Ligare v. Peacock, 109 Ill. 94; Spurck v. Leonard, 9 Ill. App. 174; Porter v. Tolbert, 113 Mich. 486. (2) Notice need not be actual to one who has had no dealings with the firm prior to the dissolution. 6 Current Law, 927; Shumaker on Partnership (2 Ed.), sec. 121, p. 216; Knahs v. Givens, 110 Mo. 63; Smith & Cheney Co. v.

Schmidt (Mich.), 105 N. W. 39. Notice may be inferred from circumstances from which knowledge of the dissolution ought to be inferred. Lumber Co. v. Anderson (Minn.), 105 N. W. 972. (3) The only other point raised by appellant is an objection to defendant's third instruction. It is to be first observed of this instruction that it does not authorize a verdict, and not so authorizing a verdict for defendant, reversible error could hardly be predicted thereon. Burdoin v. Trenton, 116 Mo. 371; Keim v. Vette, 167 Mo. 405; Bank v. Faults & Co., 115 Mo. App. 42; Long v. Story, 10 Mo. 397; Richardson v. Moies, 31 Mo. 430; Pope v. Risely, 23 Mo. 185; Knaus v. Givens, 110 Mo. 58; 1 Lindley on Partnership, 412; 1 Bates on Partnership, sec. 331.

BROADDUS, P. J.—This is a suit to recover judgment on a promissory note for seventy-five dollars, dated January 22, 1898, due in sixty days, bearing eight per cent interest, alleged to have been executed by J. C. Ogden, Cornelia Ogden and defendant Wesley Wood. Its execution by the Ogdens is admitted. It is also admitted that Wood did not in person sign the note, but that it was written by J. C. Ogden. Wood denies that Ogden had any authority to execute the note in his name. The issue was tried before a jury and a verdict was returned in favor of defendant, upon which judgment was rendered and plaintiff appealed.

The undisputed facts are that Wood was a farmer living within a few miles of the village of Bancroft in Daviess county, Missouri and that J. C. Ogden became an inmate of his family from the time he was fifteen years of age until he married at the age of twenty-two, when he moved to a farm in the same vicinity. In February, 1897, Ogden moved to Bancroft and engaged in the hardware business. About the same time Wood rented out his farm and also moved to Bancroft. In March or April of that year Wood and Ogden formed

a partnership as dealers in agricultural implements. Neither put any money into the business, and the goods were bought on the credit of Wood. A building was bought for the storage of the implements, but the business was carried on at the hardware store. It does not appear, however, that any partnership existed in hardware.

The partnership business was conducted until August following when Ogden sold his stock of hardware and moved back to the farm. All the agricultural implements were also sold, except certain articles which defendant carried with him when he moved back to his farm in the month of October. Wood testified that the partnership quit business when Ogden moved from Bancroft to his farm in August and that the partnership was dissolved.

The financial affairs of the firm were had with the Farmers & Merchants Bank of Jamesport and the Gilman Bank at Gilman City, from both of which Ogden borrowed money for which he executed the notes of himself and Wood. He also borrowed a sum of money from a Mr. Netherton, for which he executed a note signed by him with his name and that of defendant. The Netherton note bears date subsequent to the time Wood claimed that the partnership was dissolved. Some of the notes to the banks named were given while the business was being carried on, but others bear a subsequent date. Wood denied that Ogden had authority to sign his name to these notes, but the evidence tends to show that Ogden was to be the active and managing partner of the concern and that he had authority to sign his partner's name in all transactions relating to the business and his after-conduct in paying or securing

said notes, and suffering judgment by default on some of them, tends to show that they were signed by his authority.

The note in suit was executed under the following circumstances. A man by the name of Davis, a brother-in-law of Ogden, purchased from the plaintiff a pair of horses at the price of eighty-five dollars, for which he paid in cash thirty dollars, leaving unpaid fifty-five dollars. By agreement, Davis gave plaintiff a note he held on Ogden for a sum somewhat in excess of fifty-five dollars to hold as security for the payment of the latter sum. In a day or two Ogden saw plaintiff and said to him that he had the money to pay the Davis note, but that he needed money to pay some indebtedness of the implement business. Plaintiff agreed to let him have twenty dollars, for which Ogden offered to give him a note including the said sum of fifty-five dollars, but, as there were no blank forms for notes on hand, the matter was postponed. The parties met the next day in Gilman when plaintiff directed Ogden to have his wife also sign the note. The note was written signed and delivered to plaintiff. The plaintiff at the time, however, disclaimed any intention of taking the note in discharge of the indebtedness of Davis.

The plaintiff knew that Wood's name to the note was signed by Ogden. He also knew that both Ogden and Wood had left Bancroft and moved to their respective farms, and that no business was being carried on by them at that place. He lived within a mile or so of the village and it is presumed had a general knowledge of what was transpiring in the small business affairs of the place. On cross-examination he was asked if he knew that the signature to the note was not that of Wood. He answered that he did. In substance, he was then asked if his reason for wanting the name of Mrs. Ogden on the note was because he was not willing to take his chances on the names of Wood and

Ogden signed to the note by the latter. This question he did not answer. He stated that at the time the note in controversy was given, he knew that Ogden was using the name of Wood in giving partnership notes.

The chief contention of plaintiff is that the verdict and judgment are wholly unsupported by any evidence. The testimony shows that prior to the giving of the note in suit the partners had ceased to do business and had dissolved the partnership. But upon this proof alone the defendant was not entitled to recover, as one partner can bind the partnership by the execution of a note to a third person even after dissolution without notice. [Knaus v. Givens, 110 Mo. 58.] But after its dissolution with notice one partner cannot bind the partnership by the execution of a note for a previous indebtedness. [Knaus v. Givens, supra; Story on Partnership, sec. 322.] The evidence, as stated, we think, has a tendency to show that plaintiff knew that the partnership was dissolved prior to the date of the note. Notice is a question of knowledge and that was a matter for the jury to pass upon.

, The following instruction given at the instance of defendant is claimed to have been error, viz.: "The fact, if it be a fact, that suits were brought on one or even a number of notes to which Ogden had signed defendant's name, without any authority from defendant to do so, against the defendant, and that defendant made no appearance thereto, or allowed the same to go to judgment by default, such fact would raise no presumption in law that defendant authorized said Ogden to sign his name to the note sued on."

The reference in the instruction is to the notes given by Ogden in the name of himself and Wood in the course of the partnership and after its dissolution to raise funds to carry on the business or pay for liabilities already incurred. Suit was brought on some of

Osborn v. Wood.

these notes and defendant suffered judgment by default. It is a theory of plaintiff that as Ogden had authority to execute these notes in the name of himself and Wood, it showed by such a course of dealing general authority or agency in Ogden to use the name of Wood in the giving of notes. We think not, as it does not appear that Ogden so used the name of Wood except in respect to partnership liabilities, save the one in controversy. From these facts, at most, we can only infer a special authority to execute notes relating to the partnership affairs. After the dissolution of partnership and notice, one partner cannot give notes in the name of the firm, or in renewal of a note of the firm, so as to bind the other members without special authority. [Richardson v. Moies, 31 Mo. 430; Long v. Story, 10 Mo. 636.] As Wood was liable for the partnership debts, it is a reasonable and natural conclusion that he would empower his partner, who had been an active member in the business, to settle the firm's business by the execution of the notes of the members of the firm for its indebtedness. Had there been evidence of the execution of the notes for other than partnership indebtedness, the conclusion would have been otherwise.

Finding no error in the trial, the cause is affirmed.