LOUISIANA PURCHASE EXPOSITION COMPANY, Appellant, v. FRANK C. MUELLER, Respondent.

St. Louis Court of Appeals. Submitted on Briefs March 3, 1913. Opinion Filed April 8, 1913.

1. PARTNERSHIP: Power of Partner After Dissolution. A partner cannot, after dissolution of the partnership, ratify a contract purporting to have been entered into by the firm but which, in fact, was not.

2. PLEADING: Variance. Where one is sued on the theory that he is liable as a partner on a firm contract alleged to have been ratified by him for the firm, he cannot be held liable on the theory that he entered into a new contract in his individual capacity.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*L. L. Leonard* for appellant.

*Muench, Walther & Muench* for respondent.

REYNOLDS, P. J.—Plaintiff brought its action against defendant to recover on what it claimed to be

a subscription for ten shares—$1000—of its capital stock. The petition, averring that Frank C. Mueller, the defendant, and one Charles A. Mueller, were copartners under the firm name of C. A. Mueller & Bro., sets out the facts connected with the incorporation and organization under the laws of Missouri, of the company plaintiff, formed for the purpose of holding a World's Fair at the city of St. Louis, in celebration of the centennial anniversary of the Louisiana Purchase; the signing of a certain agreement in which it is recited that for the purpose of organizing the corporation, the subscribers agree, each in consideration of the other subscriptions thereto and each separately for himself and not for any other, to pay the amount set opposite their respective names to the chairman of the committee of finance of the corporation in installments as follows: ten per cent of the subscription upon demand of that chairman, which sum may be called in in such amounts as may be required by the committee on finance and used in its discretion for preliminary expenses incurred or to be incurred in the organization of the corporation and to promote the enterprise for which it is to be formed, the remaining ninety per cent payable upon the call of the board of directors of the proposed corporation when organized, the subscription not to become binding until the full amount of five million dollars shall have been subscribed. It is then averred that the name of the firm of which the defendant, Frank C. Mueller, was a member, was subscribed to the contract of subscription "by some person or persons to this plaintiff unknown and without the consent of said defendant; and that said instrument thus signed was delivered to the promoters of plaintiff corporation and accepted by them and by plaintiff corporation. . . . That said defendant, Frank C. Mueller, and said Charles A. Mueller, were thus apparent subscribers to said agreement and that they apparently subscribed for one hundred shares of

ten dollars each; that they thereby apparently promised and agreed to and with the other subscribers thereto to become stockholders and to take one hundred shares in the corporation to be organized.'' That the full amount of five million dollars required by the contract to be subscribed had been duly subscribed and the corporation duly organized and all steps required by law for the proper organization and incorporation of plaintiff were taken; that plaintiff corporation accepted the subscription ''and, relying upon the said subscription apparently made, as aforesaid, by defendant, and other persons,'' expended large sums of money in and about the incorporation of plaintiff and in building and constructing buildings for holding the World's Fair, and entered into contracts and incurred liabilities for a large amount in that behalf, and that thereafter the committee on finance required ''defendant and other subscribers to the stock'' to pay ten per cent upon their respective subscriptions to the chairman before named for preliminary expenses; that on March 18, 1901, the sum of $100 was ''demanded of the defendant'' by the chairman as ''the first call of ten per cent upon the shares apparently subscribed by defendant and said Charles A. Mueller.'' It is further averred that ''on or about the —— day of March, 1900,'' the partnership between Frank C. and Charles A. Mueller was duly dissolved and that thereafter, to-wit, on the tenth day of August, 1901, the defendant Frank C. Mueller, ''well knowing that said instrument had been signed and delivered in the manner aforesaid, and with full knowledge of all of its material terms, or well knowing that plaintiff claimed to hold his said subscription to $1000 of plaintiff's capital stock and without further inquiry or investigation as to the terms of said alleged subscription, did pay said first call of $100, as demanded, and that thereby said defendant Frank C. Mueller ratified the execution and delivery of said instrument.'' Averring that there-

after in accordance with the contract and its by-laws, plaintiff made and issued a second call, payable September 15, 1901, as well as third, fourth, fifth and sixth calls on its stock, and by these several calls required defendant and other subscribers to pay to the treasurer of plaintiff the remaining ninety per cent on dates specified, it is averred that defendant failed and refused to pay these calls or any part thereof, although he had due notice thereof. Averring that defendant thereby became and is justly indebted to plaintiff in the sum of $900, with interest at the rate of six per cent per annum from the respective dates when the installments respectively became due, judgment is demanded for this amount with interest and costs.

The defendant filed a demurrer to this petition, assigning four grounds. First, that the petition does not state facts sufficient to constitute a cause of action. Second, because the alleged subscription contract set out in the petition shows upon its face that it was not to be performed within a year and was within the Statute of Frauds, and the alleged ratification thereof was oral and for that reason insufficient under that statute. Third, that the shares of stock in the unincorporated company provided for in the subscription contract, are goods, wares and merchandise within the purview of the Statute of Frauds and were of the price of thirty dollars and more and that hence the contract is within the Statute of Frauds and the alleged ratification was oral and therefore insufficient under the statute. Fourth, that the petition shows no partnership liability on the part of defendant, nor does it show an adoption or ratification of the alleged partnership liability.

This demurrer was sustained by the court and plaintiff declining to plead further final judgment was rendered in favor of defendant. From that judgment plaintiff duly perfected its appeal. Pending the appeal the corporate existence of plaintiff terminated

under its charter and its affairs are being wound up by its last board of directors, as trustees. These have been duly substituted here as parties plaintiff and prosecute this appeal.

Counsel have presented elaborate briefs and arguments in support of their several positions, counsel for respondent arguing that it appearing that the signature of the firm of which respondent was a member had been forged, there could be no ratification; that it being averred in the petition that that signature was made without the authority, or knowledge, of the firm, and by one not an agent of the firm, could not be ratified, and that it being pleaded that the payment of one hundred dollars by respondent on the call for the first installment having been made by him after the dissolution of his firm, he had no authority to do so and could not thereby ratify the firm's subscription.

All these positions are sharply contested by counsel for appellant. Neither counsel discuss to any great extent those grounds of the demurrer which set up the Statute of Frauds, so we will not consider them. Nor do we deem it necessary to consider or determine any of the other propositions raised, save as to the power of the respondent to ratify an admittedly unauthorized act, originally done in the name of the firm, after the dissolution of the firm. It will be noticed that the petition contains no averments of any special authorization to the respondent, as member of the dissolved firm, to carry on its business or adjust its affairs. How or why or under what circumstances, terms or conditions, the partnership of C. A. Mueller & Bro., was dissolved, does not appear; whether it was to continue for the purpose of payment of firm debts and collection of firm assets, is not pleaded.

The law is well stated by Judge THOMPSON, speaking for this court, in Hargadine v. Gibbons, 45 Mo. App. 460, l. c. 461, to the effect that "the dissolution of a partnership, whether it takes place by the death

of a member, or by the expiration of the period of limitation named in the partnership articles, does not produce a cesser of the partnership relation for all purposes, but only for the purposes of continuing the partnership business and incurring new liabilities.'' This is a brief statement of the rule so elaborately discussed and illustrated by Mr. Justice STORY in his treatise on the Law of Partnership (7 Ed.), sec. 322, that author saying: ''None of the partners can create any new contract or obligations binding upon the partnership, . . . or in any way make their acts the acts of the partnership.''

In the notes by the editor of that edition of Story to section 322 and following, will be found an exhaustive discussion and compilation of cases as to the right of a member of a firm, after dissolution, to bind the other members or assets of the firm, as for instance, by waiving the bar of the Statute of Limitations. It is not necessary to go fully into that. The learning of the law will be found in that work.

In Long v. Story, 10 Mo. 636, l. c. 640, our Supreme Court held the principle to be well established that after the dissolution of a firm, one partner cannot bind the other by drawing a note in the partnership name unless he has a particular power vested in him for that purpose. This was reiterated in Richardson v. Moies and Woodward, 31 Mo. 430.

In Central Savings Bank v. Mead, Admr., 52 Mo. 546, our Supreme Court followed the general rule that a surviving partner had no authority to renew the indorsement of the firm on accommodation paper.

In Fairbanks v. Kraft, Holmes & Co., 43 Mo. App. 121, the Kansas City Court of Appeals held that it was not within the power of one partner, after dissolution of the firm, to confess judgment against the firm; that judgment entered on such confession was invalid as against the firm.

In Huling v. Roll, 43 Mo. App. 234, l. c. 243, that court held that one of the partners, after dissolution, could not revive the obligation of a covenant of the partnership which was discharged, without the consent of all the partners. See, also, Osborn v. Wood, 125 Mo. App. 250, l. c. 256, 102 S. W. 580.

The decision of the case before us must rest on the power of a member of a firm, after its dissolution, to revive, by ratification, a subscription made in the name of the firm, which, as it is pleaded, was not an obligation of the firm. Nor does it purport to be the individual act of respondent.

It is true that the petition avers that "said defendant, . . . . well knowing that plaintiff claimed to hold *his said* subscription to one thousand dollars of plaintiff's capital stock, . . . did pay said first call of $100 as demanded, and that thereby said defendant Frank C. Mueller ratified the execution and delivery of said instrument." But the context, the whole tenor of the petition, shows that the subscription referred to did not purport to be the individual subscription of the defendant, but purported to be the firm's subscription, that subscription made in "the name of the firm of which defendant was a member," being "subscribed to said contract of subscription by some person or persons to this plaintiff unknown and without the consent of the said defendant; and that said instrument thus signed was delivered to the promoters of plaintiff corporation and accepted by them and by plaintiff corporation." Whatever he ratified, then, if anything, by the payment of the call for the first installment, was the firm's subscription. This he had no power to do, under the law of partnership, nor by reason of any special powers set out in the petition.

If it be said that a new contract was made by the defendant by reason of the payment of the call, then no such contract is pleaded. The only contract plead-

ed as having been ratified is the one purporting to be in the name of the firm, not an individual contract of this defendant.

In this view of the case, we do not consider it necessary to notice the other points so elaborately briefed and argued. The demurrer was properly sustained on the first and fourth grounds. The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.*, concur.