**Blnnie E. SELLMAN, Appellant,**

v.

**AMERICAN NATIONAL INSURANCE COMPANY, Appellee.**

No. 6815.

Court of Civil Appeals of Texas.

Texarkana.

June 16, 1955.

Rehearing Denied July 14, 1955.

Shelburne H. Glover, Texarkana, for appellant.

John D. Raffaelli, Texarkana, for appellee.

DAVIS, Justice.

On May 3, 1943, American National Insurance Company, hereinafter referred to as the Company, issued to Van I. Sellman, a resident of the State of Arkansas, a policy of life insurance in the principal sum of $500, with double indemnity benefits in case of accidental death, and which policy also contained a cash surrender provision. Binnie E. Sellman, wife of the insured, was named as beneficiary in said policy. Sellman and wife were divorced in Arkansas in 1945. Mrs. Sellman, who had an insurable interest in the life of her husband under the laws of the State of Arkansas, continued to pay the premiums on said policy through August 1953.

In the afternoon of August 27, 1953, a man was hit by a train in the city of Texarkana, Arkansas, and was carried to a hospital where he died at 9:55 that night, without regaining consciousness. Grant Baldwin, a member of the train crew in charge of the train involved in the accident, and a brother-in-law of Sellman, identified the man as Van I. Sellman. The mother of Sellman also identified the man as her son. A sister, a nephew and a niece, as well as other members of the family, also identified the man as Van I. Sellman and the body was buried by the Sellman family and the expenses of the funeral were paid by Grant Baldwin, the brother-in-law.

The local newspaper carried an account of the accident and death which was noted by one R. H. Cooper, an agent and representative of the Company, who immediately attempted to contact Binnie E. Sellman for the purpose of securing her signature to the

proper forms for the payment of the insurance because "it is good advertising to pay insurance claims promptly." He left word at Mrs. Sellman's home for her to contact him, which she did by telephone, and Cooper promptly went to her home; prepared a "proof of death" on a form furnished by the Company. Mrs. Sellman signed it, and surrendered the policy of insurance and receipt book to Cooper. Then Cooper went to the hospital and secured another "proof of death" on a Company form from Dr. Louis P. Good, the attending physician. Then he, Cooper, prepared a "Death Claim Statement of Company Representative" on a Company form in which he showed the source of knowledge of death of deceased was "Dr. Statement," signed it and forwarded the policy, receipt book, both proofs of death, death claim statement and newspaper clipping to the Home Office of the Company. The Company on September 10, 1953, issued its check payable to Binnie E. Sellman (BFCY) in the principal sum of $1,000, and cancelled the policy. The check was delivered to Mrs. Sellman who cashed it on September 12, 1953, and, according to her testimony, she paid debts with $859 and bought a suit and other things with the rest.

Some week or ten days later, according to Grant Baldwin, the brother-in-law, some woman called him by long distance telephone from Longview and told him that Van I. Sellman was living and was there in Longview. Baldwin testified that he and his son went to Longview and saw Sellman. The record does not show who reported to the Company that Sellman was living, but they heard about it and immediately contacted Mrs. Sellman and demanded that she return the $1,000. Mrs. Sellman refused to refund the money and the Company filed suit against her.

The Company alleged in its petition, "* * * that at the time the proof of death and the claim under the policy was made by the plaintiff, that Van I. Sellman was alive, but that said fact was not known to the plaintiff * * *." There is no allegation of fraud at all, neither does the record show the slightest element of fraud. The Company alleged that Mrs. Sellman made certain representations to it in the proof of death signed by her, but such allegations are not supported by the evidence. The Company did not tender the policy back to Mrs. Sellman.

Trial was to a jury. The Company offered in evidence the insurance policy, both proofs of death, the Company representative death claim statement, the cancelled check which contained a statement of full settlement of the claim, and the newspaper report of the accident and death, all of which was offered without any limitation whatever. It next called as a witness Grant Baldwin, the brother-in-law, who testified that Van I. Sellman was still living and had spent the night with him the night before the trial. This was the only testimony that was offered to the effect that Van I. Sellman was living, and Baldwin said the two men were as much alike as "two black-eyed peas" and, "if I had it to do over again, I would do the same thing."

There was also a stipulation entered into at the trial which sets out most of the facts hereinabove outlined, and some other matters. Appellee lays much stress on a phrase wherein it was stipulated in part as follows: "On or about August 27th, 1953, a certain person whose name is unknown was injured in a railroad accident * * *." In next to the last paragraph of the stipulation we find the following:

"Thereupon the American National Insurance Company issued its check No. 700867, dated September 10th, 1953, payable to the order of Binnie E. Sellman (BFCY), in the sum of One Thousand and no/100 ($1000.00) Dollars, said check being given in payment of the amount due as an accidental death claim under the policy above described. This check was delivered to Binnie E. Sellman, defendant herein, and was cashed by her, and that the said Binnie E. Sellman was paid One Thousand and no/100 ($1000.00) Dollars in payment of the amount due under said check."

The Company contends that the quoted phrase is an absolute admission that Sellman is still living. One will readily note the conflict in the quoted paragraph to such contention: The money paid that was "due" could have been "due" only in the event Sellman was dead. Because of the irreconcilable conflict, the stipulation on that question amounts to exactly nothing.

The evidence further shows that Mrs. Sellman did not see the body of the deceased, or attend the funeral.

Only one issue was submitted to the jury which inquired if Van I. Sellman was living on September 10, 1953, to which the jury answered "No."

On motion by the Company, the trial court granted a judgment non obstante veredicto, and appeal by Mrs. Sellman was duly perfected.

Appellee brings forward four points of error. By points 1 and 2 she complains of the action of the trial court in granting the motion for judgment non obstante veredicto and contends that the evidence is ample to support the jury finding. These two points, as well as the other two under the state of this record, have caused us much concern. After much research, we have concluded that, under the state of the record, points 1 and 2 are well taken and must be sustained. We must view the evidence in the light most favorable to the appellant and can consider only the testimony and evidence which tends to support the verdict of the jury. 3–B Tex.Jur., 382, Sec. 914, and authorities cited therein; 41–B Tex.Jur., 820, Sec. 592, and authorities cited therein.

The Company offered in evidence sufficient proof to conclusively show that Van I. Sellman, named in the policy, was dead, and offered them without limitation or for any particular reason or purpose. If a proponent offers evidence and desires to limit the purpose of its consideration by the jury, he must by special motion request its limitation. McCormick & Ray, Texas Law of Evidence, pp. 12 and 13, Sec.

12; Blum Milling Co. v. Moore-Seaver Grain Co., Tex.Com.App., 277 S.W. 78; Hammond v. Schuermann Building & Realty Co., 352 Mo. 418, 177 S.W.2d 618; McCormick on Evidence, p. 115, Sec. 52.

Appellee contends that the only evidence in the record as to whether Van I. Sellman was living or dead was the testimony of Grant Baldwin, the brother-in-law, who was a member of the train crew that struck the deceased, who identified the man as Van I. Sellman, who paid the funeral expenses, and with whom Van I. Sellman supposedly spent the night before the trial. It further contends that Baldwin was a disinterested witness, that his testimony was plain and positive and that the trial court had no other alternative than to grant the motion for judgment non obstante veredicto. We might add that the pleadings joined the issue on the question of whether Sellman was dead or alive. From what we have already said, there was evidence that Sellman was dead, and we have concluded that Baldwin was an interested witness because one who is responsible for a calamity or who is prejudiced in a matter is an interested witness; 45 Tex.Jur. 290, Sec. 352, and authorities cited therein; and it was necessary for the trial court to submit the issue on such question so the jury could pass upon the same, and the credibility of the witness. 45 Tex.Jur., 290–300. We will further add that Cooper, who was the agent, testified that he did not know whether Sellman was living or dead at the time of the trial.

Appellee contends that the instruments were admissible for the purpose of showing the basis for their having paid the money and for the purpose of attacking same. They were not limited to those purposes and no motion was made that they be so limited. It relies upon the cases of Colgrove v. Falfurrias State Bank, Tex. Civ.App., 102 S.W. 580, no writ history, and Universal Credit Co. v. Boling, Tex.Civ. App., 108 S.W.2d 836, no writ history, as supporting such contention. In each of those cases the parties were seeking relief because fraud was involved in the instru-

ments offered in evidence and such fraud was pleaded as a basis for the suit. As heretofore stated, no fraud was pleaded or proved in this case. Cooper, the former agent of the Company, testified that Mrs. Sellman did not at any time tell him that Sellman was dead because she did not know, and in making the payment to her, he relied strictly on what was in the newspapers; what the doctor told them, and what the undertaker told them. And he further testified: "That was the sole source of information." Therefore, we think such condition, when considered with the record as a whole, places the mistake, if any, in the category of a unilateral mistake, and money paid under a unilateral mistake cannot be recovered. Texas Osage Co-op Royalty Pool v. Guzman, Tex.Civ. App., 153 S.W.2d 239.

By points 3 and 4 appellant complains of the action of the trial court in rendering judgment against her because no fraud was involved, she had changed her position and the Company was estopped to recover the money.

Appellant had paid the premiums on the policy for more than ten years and it had a cash surrender value. The appellee did not offer to return the policy in good standing and permit appellant to continue it in force, or offer to pay or credit her with the cash surrender value.

This being a suit in equity, we think the maxim applicable here is "He who seeks equity must do equity." Therefore, the Company having failed to do or to offer to do equity, it is estopped to recover the money. 2 Pomeroy's Equity Jurisprudence 51, Sec. 111, and authorities there cited; 30 C.J.S., Equity, § 91, p. 461, and authorities there cited. As stated in the last cited authority: "The offer to do equity within the meaning of the maxim is a matter of pleading, but the doing of equity is a condition on which the relief, if any, is to be granted." There is neither pleading nor proof in this record of any "offer" or "doing" that would justify the Company to the relief sought.

An insurance company suing to cancel a policy for fraud must return the premiums. 2 Pomeroy's Equity Jurisprudence 79, Sec. 393b; Metropolitan Life Ins. Co. v. Freedman, 159 Mich. 114, 123 N.W. 547, 32 A.L. R.,N.S., 298. Appellant had changed her position from that of a valid policy holder with a valuable cash surrender value, through no fraud on her part, and, if Sellman was still alive, she was entitled to her policy in good standing; or, at least, to its cash surrender value. Points 3 and 4 are sustained.

For the errors hereinabove pointed out, it becomes our duty to reverse the judgment of the trial court and to render such judgment as the trial court should have rendered. Therefore, the judgment of the trial court will be reversed and judgment is here rendered that appellee take nothing, and it is so ordered.