W.R. EDWARDS, Jr., Appellant

v.

MID–CONTINENT OFFICE DISTRIB-
UTORS, L.P. and Inwood Office
Furniture, Inc., Appellees.

No. 05–06–01421–CV.

Court of Appeals of Texas,
Dallas.

April 25, 2008.

Kent Frank Brooks, Dallas, for Appellant.

Darrell G. Noga, Elizabeth Flora, Fee, Smith, Sharp, Vitullo, LLP, Robert H. Renneker, Dallas, for Appellees.

Before Justices LANG, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice LANG–MIERS.

W.R. Edwards, Jr. appeals the trial court's judgment for appellees, Mid–Continent Office Distributors, L.P. and Inwood Office Furniture, Inc., following a bench trial on a claim for money had and received. For the reasons that follow, we affirm.

### BACKGROUND

The trial testimony showed that Edwards was a member of an informal lending cartel. He met Matthews through a mutual cartel acquaintance and subsequently loaned him $10,000. Matthews re-

paid that loan on time. A few months later, Matthews approached Edwards seeking another loan. He told Edwards that his company, MAC Group, L.L.C. (collectively Matthews or MAC), a furniture broker, needed to borrow money in connection with three of its customer orders. He explained that three customers placed furniture orders with MAC, each gave MAC a fifty percent deposit, but his suppliers would not deliver the furniture until MAC paid them the full amount. Matthews proposed to sell the receivables for these customers to Edwards at a discounted value if Edwards would agree to pay off the suppliers so the furniture could be delivered. Together, Matthews and Edwards drafted a "Factoring Agreement" which reflected the terms of their agreement. It listed the three customers, with total payments owed to MAC of approximately $70,000.00; and seven suppliers to whom MAC owed a total of $62,052.93, including $28,272.22 to Mid–Continent, a furniture wholesaler, and $15,292.34 to Inwood, a furniture manufacturer.

At Matthews' request, Edwards called Pat Henin, an operations manager at Mid–Continent, to verify the amount MAC owed. The telephone conversation lasted five minutes or less, and there is conflicting testimony about what was said. However, Edwards testified that Henin confirmed the balance MAC owed and that he understood her to say Mid–Continent was holding orders for these MAC customers until it received full payment.[1] Based on this conversation, Edwards did not think he needed to call Inwood or the other suppliers to confirm that they were also holding orders for these MAC customers,[2]

---

1. Henin testified that she would not know the names of MAC's customers because furniture orders were typically shipped to an installer, not directly to the customer.

2. Edwards also reviewed a copy of MAC's invoices to these customers, but Matthews did

not provide, and Edwards did not ask to see, the orders MAC placed with Mid–Continent, Inwood, and the other furniture suppliers to compare to MAC's customer invoices. Matthews also provided a copy of "MAC Group's Income History & Projections" from 2002

and he signed the Factoring Agreement, agreeing to purchase MAC's receivables. He obtained a cashier's check for $28,272.22 payable to Mid–Continent and authorized Matthews to pick up the cashier's check and hand deliver it to Mid–Continent. The cashier's check contains the notation "MAC 908."[3] Edwards also wrote personal checks on his Schwab account to the remaining suppliers, including a check to Inwood for $15,292.22.[4] All of those checks contained the notation, "MAC Group Payment," in the "For" line.

Matthews wrote letters to the three MAC customers advising them that their accounts had been sold to Edwards and to forward their payments to Edwards. When Edwards did not receive their payments, he called them to find out why they had not paid him. The customers told him they never received the furniture. Edwards then called Matthews. Matthews admitted he deceived Edwards and told him the payments Edwards made to the vendors were for past-due balances on orders for other customers, not the customers whose receivables Edwards purchased.

Edwards sued Mid–Continent and Inwood for damages.[5] The parties waived a jury and tried the case to the court. Edwards contended that he paid the money to Mid–Continent and Inwood by mistake "based [on] a fraudulent representation of another party" and appellees owed him the money he had paid them. The trial court disagreed and entered a take-nothing judgment in favor of Mid–Continent and Inwood. It subsequently issued findings of fact and conclusions of law. In two issues on appeal, Edwards specifically challenges the legal and factual sufficiency of certain of the trial court's findings of fact. He contends that he proved the claim for money had and received against appellees and the trial court erred by granting a take-nothing judgment against him.

## STANDARD OF REVIEW

Appellant complains about the findings of fact issued by the court to support its judgment denying his claim for money had and received. However, a review of the findings of fact in this case does not end our inquiry. Instead, we review those findings in the context of whether they support the judgment denying him relief. Those reviews involve overlapping standards of review.[6]

through December 2003 but Edwards testified that he did nothing to verify the numbers contained in that report.

3. The evidence shows that "908" is Mid–Continent's customer number for MAC.

4. Although the check to Inwood was twelve cents less than the amount listed in the agreement, Edwards testified that the check he wrote to Inwood corresponded to the same payable in the agreement.

5. Edwards did not sue Matthews, MAC, or the other five suppliers. He sued both Inwood and Mid–Continent for money had and received. He also sued Mid–Continent for breach of contract, fraud, negligent misrepresentation and unjust enrichment. This appeal involves only the claim for money had and received.

6. In cases involving overlapping standards of review, Texas courts have held that a reviewing court must first determine whether the trial court had sufficient information upon which to exercise its discretion and then whether the trial court erred in applying that discretion. See, e.g., Reese v. Duncan, 80 S.W.3d 650, 659 (Tex.App.-Dallas 2002, pet. denied) (trial court does not abuse discretion if evidence is sufficient to support findings of fact); In re C.A.M.M., 243 S.W.3d 211, 220–21 (Tex.App.-Houston [14th Dist.] 2007, no pet. h.) (legal and factual insufficiency are not independent grounds for reversal but instead are factors to be considered in determining whether trial court abused discretion); Sotelo v. Gonzales, 170 S.W.3d 783, 787 (Tex.App.-El Paso 2005, no pet.) (once reviewing court determines whether sufficient evidence exists upon which trial court could exercise its discretion, then must decide whether trial court made reasonable decision); El Paso County

The claim for money had and received seeks equitable relief. *See Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n. 1 (Tex.2007) (per curiam); *Acoustical Screens in Color, Inc. v. T.C. Lordon Co., Inc.*, 524 S.W.2d 346, 350 (Tex. Civ.App.-Dallas 1975, writ ref'd n.r.e.). And a trial court exercises broad discretion in balancing the equities involved in a case seeking equitable relief. *See In re Gamble*, 71 S.W.3d 313, 317 (Tex.2002) (orig.proceeding); *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939). We will not disturb a trial court's ruling on a claim seeking equitable relief unless it is arbitrary, unreasonable, and unsupported by guiding rules and principles. *See Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex.2004). When a trial court makes written findings of fact following a non-jury trial, these assist in our review of the trial court's exercise of its discretion by revealing the trial court's reasoning and analysis and help assure both the reviewing court and the litigants that the trial court's decision resulted from thoughtful deliberation. *See Williams v. Chisolm*, 111 S.W.3d 811, 815 (Tex.App.-Houston [1st Dist.] 2003, no pet.). If the evidence is sufficient to support the trial court's findings and conclusions, the trial court did not abuse its discretion. *See Reese v. Duncan*, 80 S.W.3d 650, 659 (Tex.App.-Dallas 2002, pet. denied); *El Paso County Hosp. Dist. v. Gilbert*, 64 S.W.3d 200, 203–04 (Tex. App.-El Paso 2001, pet. denied).

We review challenges to the sufficiency of the evidence to support findings of fact under the same standards for reviewing evidence to support a jury's verdict. *Walker v. Cotter Prop., Inc.*, 181 S.W.3d 895, 899 (Tex.App.-Dallas 2006, no pet.).

In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 414 (Tex.App.-Dallas 2006, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005)). Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *Walker*, 181 S.W.3d at 899. When we review a finding for factual sufficiency, we consider all of the evidence and will set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001) (per curiam); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). And we review a trial court's legal conclusions de novo. *See Walker v. Anderson*, 232 S.W.3d 899, 908 (Tex.App.-Dallas 2007, no pet.). We evaluate those conclusions independently to determine whether the trial court correctly drew the conclusion from the facts. *Id.* Unchallenged findings of fact are conclusive on appeal unless the contrary is established as a matter or law or there is no evidence to support the findings. *Toles v. Toles*, 45 S.W.3d 252, 265 n. 6 (Tex.App.-Dallas 2001, pet. denied) (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986)).

Consequently, we first determine whether the evidence is sufficient to support the challenged findings and then determine whether the trial court's judgment—as a decision of a claim seeking equitable relief—is arbitrary, unreasonable, or unsupported by guiding rules and principles.

*Hosp. Dist. v. Gilbert*, 64 S.W.3d 200, 203–04 (Tex.App.-El Paso 2001, pet. denied) (after analyzing legal and factual sufficiency issues, reviewing court then determines whether, based on evidence, trial court made reasonable decision or whether it is arbitrary and unreasonable).

CLAIM FOR MONEY HAD AND RECEIVED

■ Edwards contends that he established each element of his claim for money had and received. As we noted, a cause of action for money had and received is equitable in nature. *Stonebridge Life Ins. Co.*, 236 S.W.3d at 203 n. 1; *Acoustical Screens in Color, Inc.*, 524 S.W.2d at 350. The claim "belongs conceptually to the doctrine of unjust enrichment." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex.App.-El Paso 1997, no writ).[7] The doctrine of unjust enrichment applies the principles of restitution to disputes that are not governed by a contract between the parties. *Id.* It characterizes the result of a failure to make restitution under circumstances that give rise to an implied or quasi-contractual obligation to return those benefits. *Id.*

■ The courts describe this claim in general principles. For example, courts have stated that a claim for money had and received seeks to restore money where equity and good conscience require restitution, *see id.;* it is not premised on wrongdoing, but seeks to determine to which party, in equity, justice, and law, the money belongs, *Staats v. Miller*, 150 Tex. 581, 584, 243 S.W.2d 686, 687 (1951); and it seeks to prevent unconscionable loss to the payor and unjust enrichment to the payee. *Bryan v. Citizens Nat'l Bank in Abilene*, 628 S.W.2d 761, 763 (Tex.1982). As these broad and general descriptions demonstrate, a cause of action for money had and received is "less restricted and fettered by technical rules and formalities than any other form of action. It aims at

the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which ... belongs to the plaintiff." *Staats*, 150 Tex. at 584, 243 S.W.2d at 687–88 (internal quotations and citations omitted). To prove the claim, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him. *See Best Buy Co. v. Barrera*, 248 S.W.3d 160, at 162–63 (Tex. 2007) (per curiam) (citing *Staats*, 150 Tex. at 584, 243 S.W.2d at 687). A defendant may present any facts or raise any defenses that would deny a claimant's right to recover under this theory. *Id.* at 162–63 (citing *Stonebridge*, 236 S.W.3d at 205–06 and *Staats*, 150 Tex. at 584, 243 S.W.2d at 687).

Texas courts have allowed restitution for these types of claims in a variety of cases: by a defrauded party against the party who committed the fraud, *see Staats*, 150 Tex. at 583–85, 243 S.W.2d at 686–88; *Wiseman v. Baylor*, 69 Tex. 63, 64–66, 6 S.W. 743, 743–44 (Tex.1887); by a party that made an overpayment, *Benson v. Travelers Ins. Co.*, 464 S.W.2d 709, 710–13 (Tex.Civ.App.-Dallas 1971, no writ); and by a party that paid or credited money to the wrong person or account, *see Amoco Prod. Co.*, 946 S.W.2d at 163–65 (payment to wrong person); *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 710–11 (Tex.App.-Corpus Christi 2006, pet. denied) (payment applied to wrong account); *Lyman D. Robinson Family Ltd. P'ship v. McWilliams & Thompson, P.L.L.C.*, 143 S.W.3d 518, 520 (Tex.App.-Dallas 2004,

---

7. In fact, many courts use the term "money had and received" interchangeably with other terms for similar claims. *See Friberg–Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 832 & n. 38 (Tex.App.-Fort Worth 2006) (recognizing that courts focus on facts alleged and recovery sought to categorize action as one for money had and received or for restitution), *rev'd on other grounds*, 240 S.W.3d 869

(Tex.2007) (per curiam); *see also Tri–State Chemicals, Inc. v. Western Organics, Inc.*, 83 S.W.3d 189, 193–95 (Tex.App.-Amarillo 2002, pet. denied) (assumpsit); *Amoco Prod. Co.*, 946 S.W.2d at 164–65 (unjust enrichment, implied and constructive contracts and trusts); *Greer v. White Oak State Bank*, 673 S.W.2d 326, 329–30 (Tex.App.-Texarkana 1984, no writ) (restitution).

pet. denied) (earnest money released to wrong client).

Conversely, some Texas courts have rejected a claim for restitution and held that money paid under a unilateral mistake of fact cannot be recovered. *See, e.g., Pacific Molasses Co. v. Graves,* 451 S.W.2d 294, 298 (Tex.Civ.App.-San Antonio 1970, writ ref'd n.r.e.); *Sellman v. Am. Nat'l Ins. Co.,* 281 S.W.2d 150, 154 (Tex.Civ.App.-Texarkana 1955, writ dism'd). And other courts have held that as between two innocent parties, the party that must suffer the loss is the one that mistakenly created the situation and was in the best position to have avoided it. *See Holden Bus. Forms Co. v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.,* 83 S.W.3d 274, 278 (Tex. App.-Fort Worth 2002, no pet.) (self-insured employer denied restitution of insurance benefits paid to hospital before employer discovered claim not covered by plan); *Lincoln Nat'l Life Ins. Co. v. Rittman,* 790 S.W.2d 791, 794 (Tex.App.-Houston [14th Dist.] 1990, no writ) (insurer denied restitution of benefits paid to hospital after coverage terminated); *Lincoln Nat'l Life Ins. Co. v. Brown Schools, Inc.,* 757 S.W.2d 411, 415 (Tex.App.-Houston [14th Dist.] 1988, no writ) (same).

In some cases, the trial court's ruling was reversed because the intermediate court of appeals concluded that the trial court abused its discretion in affording equitable relief. *See, e.g., London v. London,* 192 S.W.3d 6, 13–14 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (trial court's order denying father's claim for money had and received reversed on ground that evidence sufficient to support claim for equitable restitution because child support payments were made pursuant to court order later reversed on appeal); *Austin v. Duval,* 735 S.W.2d 647, 649–50 (Tex.App.-Austin 1987, writ denied) (trial court's judgment that holders of lapsed option contract entitled to restitution of earnest money reversed because earnest money forfeited under express terms of option contract); *Singer v. St. Paul Mercury Ins. Co.,* 478 S.W.2d 579, 583 (Tex.Civ.App.-San Antonio 1972, writ ref'd n.r.e.) (trial court's judgment in favor of insured reversed because insurer issued stop-payment order on check when determined no coverage). *See also Pope v. Garrett,* 147 Tex. 18, 24–25, 211 S.W.2d 559, 561–62 (1948) (court of appeals' judgment that constructive trust should not be impressed upon interests of defendants who did not participate in wrongful act reversed by supreme court because, but for wrongful acts, innocent defendants would not have inherited property).

The common thread in these decisions is that they are all dependent upon a balancing of the equities in each unique case.

## DISCUSSION

In two issues, Edwards contends that he established each element of his claim for money had and received. The first issue addresses the evidence relating to Inwood, and the second issue addresses the evidence relating to Mid–Continent.

He first contends that the evidence is insufficient to support factual findings 17, 18, 19, and 23 [8] insofar as those findings state that Inwood shipped furniture orders

---

8. These factual findings state:

17. On or about August 22, 2003, Edwards issued six other checks to Matthews's creditors:
No. 123 to Inwood Office Furniture for $15,292.22
No. 124 to HBF for $3,075.60
No. 125 to Shelby Williams for $2,659.43
No. 126 to Nienkamper ICF for $1,250.00

No. 127 to Bratrud Furniture for $4,143.40
No. 128 to Mai Space for $7,359.95
None of the foregoing checks were delivered with transmittal letters or letters of instruction.

18. The check Plaintiff sent to Inwood Office Furniture in the amount of $15,292.22, which was the amount (less 12 cents) owed by Hal Matthews d/b/a/

to MAC after it received Edwards's check. He also contends that the evidence is insufficient to support factual finding 24, which states, "The time delay of over four months from Plaintiff's payment to his claim for return of the funds caused Defendant Inwood to be deprived of other possible remedies to its detriment." And in his second issue, Edwards challenges the sufficiency of the evidence to support finding of fact 5, a similar finding insofar as it finds that Mid–Continent received product for the third order on July 29, 2003, but would not deliver this order until Matthews paid all outstanding sums owed to Mid–Continent. Edwards contends that the lack of evidence to support the challenged findings shows that Mid–Continent and Inwood did not prove that they detrimentally relied on his payments. Edwards also appears to argue that without sufficient evidence to support these factual findings, there is no evidence to support the trial court's conclusion that he did not meet his burden of proof.

We have reviewed the record and agree with Edwards that the evidence is legally insufficient to show that Inwood shipped furniture orders to MAC after Inwood received Edwards's check; that Inwood was deprived of other possible remedies by the delay in Edwards seeking a refund; and that Mid–Continent received product for the third order in July 2003, but would not

ship the order until Matthews made payment in full. However, we disagree that the insufficient evidentiary support for these findings leads to the determination that there is no support for the trial court's conclusion that Edwards did not meet his burden of proof.

■ First, Edwards does not cite, and we have not found, a case stating that a defendant must show detrimental reliance to defeat recovery. And the cases he cites do not apply in an action for money had and received, or are distinguishable. See, e.g., Bryan, 628 S.W.2d at 761–64 (reconciling common law right to restitution with provisions of business and commerce code to lawsuit by bank to recover funds paid over stop-payment order); Monarch Marking Sys. Co. v. Reed's Photo Mart, Inc., 485 S.W.2d 905, 905–07 (Tex.1972) (action for rescission of contract based on unilateral mistake); Nat'l Indem. Co. v. Spring Branch State Bank, 162 Tex. 521, 522–27, 348 S.W.2d 528, 528–31 (Tex.1961) (adopting "federal" or "equitable" rule relating to bank's use of depositor's funds); Am. Nat'l Ins. Co. v. Gifford–Hill & Co., Inc., 673 S.W.2d 915, 916–22 (Tex.App.-Dallas 1984, writ ref'd n.r.e.) (interpretation of loan agreement relating to allegation of unilateral mistake).[9] Consequently, the absence of proof of detrimental reliance by appellees does not assure Edwards's recovery. Instead, detrimental re-

the MAC Group for one of two invoices that Inwood shipped after receiving the payment.

19. Inwood Office Furniture was never paid for the second invoice shipped that date, in the amount of $1,960.92, and that amount was written off in December of 2003, so that Inwood remains unpaid for that invoice.
* * *
23. Defendant Inwood manufactured and properly shipped by common carrier the one shipment of two invoices ordered by Hal Matthews d/b/a/ the MAC Group, and

it was delivered by Nancy Baer Trucking and accepted.

9. Edwards also cites cases from other jurisdictions and an unpublished 1980 Tyler court of appeals case. See Pickett v. Republic Nat'l Bank of Dallas, Trustee, No. 1303, 1980 Tex. App. LEXIS 3119 (Tex.App.-Tyler Feb. 28, 1980). The opinion in that case was withdrawn and a new opinion substituted at Pickett v. Republic Nat'l Bank of Dallas, Trustee, 601 S.W.2d 405 (Tex.Civ.App.-Tyler 1980), aff'd, 619 S.W.2d 399 (Tex.1981). Edwards does not cite to or state how the substituted opinion supports his argument.

liance is one of the factors that a trial court considers in balancing the equities in a claim for money had and received. *See Best Buy Co.*, 248 S.W.3d at 162–63 (concluding that defenses of actual knowledge and unclean hands are not matters of avoidance but instead relate to equities necessary to determine liability in the first instance).

Additionally, as the claimant, it was Edwards's burden to prove that appellees held money which in equity and good conscience belonged to him. *See id.* Because the court concluded that he did not fulfill his burden, we must determine whether the court abused its discretion in making that decision.

It is undisputed that appellees held money. But the issue is whether Edwards also proved that the money, in equity and good conscience, belonged to him. To determine whether the court abused its discretion in deciding that he did not, we first determine whether there was sufficient evidence to support the unchallenged findings that explain the court's reasoning and analysis. Then we determine, based on the evidence, whether the decision was arbitrary, unreasonable or unsupported by guiding rules and principles. We conclude that there was and it was not.

The undisputed evidence shows that MAC owed money to Mid–Continent and Inwood for furniture orders; Edwards knew MAC owed money to Mid–Continent and Inwood for furniture orders; Edwards agreed to purchase certain of MAC's receivables even though he knew it was a high-risk transaction; Edwards confirmed the amount owed to Mid–Continent and issued a cashier's check payable to Mid–Continent for that amount; Edwards did not confirm the amounts owed to Inwood or the other suppliers, but instead paid the suppliers the amounts listed in the agreement he had with MAC; Edwards did not request copies of invoices or orders to compare to MAC's receivables; Edwards paid Inwood $15,292.22; the check to Inwood contained the notation that it was for "MAC Group Payment"; and Edwards advised Mid–Continent and Inwood to credit the payments to MAC's accounts without specifying which invoices the payments were intended to cover. This evidence is legally and factually sufficient to support the trial court's unchallenged findings of fact.[10] And these unchallenged findings

---

**10.** This evidence supports the following unchallenged findings of fact:

> 9. The transaction between [Edwards] and Matthews was a high-risk transaction through which [Edwards] hoped to make a significant profit. Although the transaction was high-risk, [Edwards] neither requested copies of purchase orders that Matthews had submitted to any of his vendors nor did he compare any purchase orders with the accounts that he was purchasing from Matthews.
>
> * * *
>
> 13. On August 18, 2003, Matthews and [Edwards] entered into an agreement entitled "Factoring Agreement" whereby Matthews sold the Billingsley, Hance Scarborough, and Senior Management invoices to [Edwards] for the sum of $62,052.81. Matthews did not provide Edwards—nor did Edwards request—

> copies of Matthews's purchase orders to or the invoices from Mid–Continent, Inwood Office Furniture, or other vendors. [Edwards] drafted and prepared the Factoring Agreement himself.
>
> * * *
>
> 15. On August 18, 2003, [Edwards] telephoned Mid–Continent's office in Houston and spoke with Pat Henin to inquire whether certain furniture had been shipped. [Edwards] did not request copies of the purchase orders submitted by Matthews or the invoices Mid–Continent had submitted to Matthews to compare the items included in those documents with the accounts he was purchasing from Matthews. [Edwards] did not ask for any written verification or detail concerning the items remaining to be shipped, nor did he specifically ask Henin where the items were being shipped. Other than placing this one call, [Ed-

also demonstrate that, unlike some cases where the claimant was awarded restitution, Edwards unconditionally paid the amounts he intended to pay to the parties he actually paid in order to satisfy debts owed by Matthews. He did not overpay Mid–Continent and Inwood. *See Benson*, 464 S.W.2d at 712–13 (restitution allowed for overpayment of automobile repair bill). He did not pay the wrong suppliers. *See Lyman D. Robinson Family Ltd. P'ship*, 143 S.W.3d at 520 (restitution allowed when earnest money released to wrong client); *Doss*, 210 S.W.3d at 710–11 (restitution authorized when financial institution applied note payment to wrong note); *Amoco Prod. Co.*, 946 S.W.2d at 165 (restitution allowed when company paid royalty interests to wrong person). And he was not defrauded by Mid–Continent or Inwood. *See Staats*, 150 Tex. at 584–85, 243 S.W.2d at 687–88 (recovery authorized when creditor refused to return surplus arising on sale of security for debt); *Wiseman*, 69 Tex. at 65, 6 S.W. at 743–44 (same).

Nevertheless, Edwards argues that the trial court erred by not balancing the equities in his favor for several reasons: Mid–Continent and Inwood engaged in business practices whereby they shipped merchandise to MAC before they knew whether or not MAC's check was covered by sufficient funds; MAC had these unpaid account balances with Mid–Continent and Inwood before Edwards sent his payments to them; requiring Mid–Continent and Inwood to refund Edwards's money would put them in the position they were in before they received Edwards's payments; the payments were not used for Edwards's benefit; Mid–Continent and Inwood did not contact Edwards about how the payments should be applied; Edwards's check to Inwood was not for the full amount of the account balance, as Inwood had been told it would be; and Edwards was deceived by Matthews. We conclude that, although these are some of several types of factors courts may consider in balancing the equities, they are not determinative of the outcome in this case.

We conclude that the trial court's decision was not arbitrary, unreasonable or unsupported by guiding rules and principles and, as a result, the court did not abuse its discretion.

We affirm the trial court's judgment.

wards] took no other steps to confirm or verify the accuracy of the accounts that he was purchasing from Matthews.

16. On August 18, 2003, [Edwards] caused a cashier's check payable to "Mid Continent Furniture Distributors, Inc." in the amount of $28,272.22 to be issued and delivered to Matthews....

* * *

20. These were the only two invoices Inwood had with the MAC Group. [Edwards] paid Inwood Office Furniture in the amount of $15,292.22 representing that he was paying Inwood on Hal Matthews or the MAC Group's behalf for the merchandise order placed by the MAC Group. The payment sent by [Edwards] stated on the face of the check that it was a "MAC Group Payment." No cover letter or instructions were sent accompanying the check sent by [Edwards] to Inwood Office Furniture.

21. Inwood Office Furniture did not represent to [Edwards] that they were holding furniture for shipment, or for a particular destination.

22. [Edwards] knew the amount owed Defendant Inwood by the MAC Group and he asked no questions about any other accounts or invoices.