CENTRAL COUNTIES CENTER FOR
MENTAL HEALTH & MENTAL RE-
TARDATION SERVICES, Appellant,

v.

Karen RODRIGUEZ, Appellee.

and

Austin State Hospital/Debbie Fiske, In-
dividually and as Next Friend of
Christopher Roy Rodriguez; and Ray-
mond Rodriguez, Appellants,

v.

Debbie Fiske, Individually and as Next
Friend of Christopher Roy Rodriguez;
and Raymond Rodriguez/Austin State
Hospital, Appellees.

Nos. 03-00-00369-CV, 03-00-00640-CV.

Court of Appeals of Texas,
Austin.

March 29, 2001.

William Scott Helfand, PLLC, Houston, for Central Counties.

Lisa R. Eskow, Asst. Solicitor Gen., Austin, for Austin State.

Martin Jay Cirkiel, Cirkiel & Associates, P.C., Round Rock, for Rodriguez.

Jay Harvey, Winckler & Harvey, L.L.P., Austin, for Fiske.

Before Chief Justice ABOUSSIE, Justices YEAKEL and PATTERSON.

YEAKEL, Justice.

Appellants Central Counties Center for Mental Health & Mental Retardation Services (the "Center") and Austin State Hospital (the "Hospital") bring these interlocutory appeals[1] from the district courts' orders denying their pleas to the jurisdiction in suits filed by appellees Karen Rodriguez in the first case and Debbie Fiske and Raymond Rodriguez in the second. Because the cases' outcome depends on this Court's determination of the same issue, we have consolidated them for oral argument and will deliver one opinion. Karen Rodriguez filed suit against the Center for personal injuries, including sexual exploitation by a Center employee. Fiske and Raymond Rodriguez sued the Hospital for damages they suffered and on behalf of their son, Christopher Roy Rodriguez, who committed suicide while he was a patient at the Hospital.[2] We will affirm the district courts' orders denying appellants' pleas to the jurisdiction.

## DISCUSSION

Because the determination of subject-matter jurisdiction is a question of

---

1. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (West Supp.2001).

2. Debbie Fiske and Raymond Rodriguez filed a notice of appeal complaining of the district court's granting of Austin State Hospital's plea to the jurisdiction on their claims based on the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001–.109

(West 1997 & Supp.2001). However, in this Court, Fiske and Rodriguez neither brief nor argue their objections to the court's ruling. Therefore, we will not address their contentions. *See* Tex.R.App. P. 38.1(e) ("brief must state concisely all issues or points presented for review").

law, we review the trial court's decision *de novo*. *Texas State Employees Union/CWA Local 6184 A.F.L.C.I.O. v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998)). The absence of subject-matter jurisdiction may be raised in a plea to the jurisdiction. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Id.* Immunity from suit is properly asserted in a plea to the jurisdiction. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex.1999).

■ Generally, sovereign immunity, unless waived, protects the State, its agencies, and its officials from lawsuits for damages, absent legislative consent to sue the State. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). Sovereign immunity embraces two principles: immunity from suit and immunity from liability. *Id.* Legislative consent to suit or liability must be "by clear and unambiguous language." *Id.*

■ Statutory construction is a question of law, *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989), the resolution of which must begin by looking to the statute's words. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998). "The goal of statutory construction is to give effect to the intent of the legislature." *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993) (citing *Harris County Dist. Attorney's Office v. J.T.S.*, 807 S.W.2d 572, 574 (Tex.1991)). Simply stated, where a statute is unambiguous, we discern the legislature's intent from the "plain and common meaning of the words and terms used." *Id.* (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990); *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985)).

■ The cases before the Court require us to construe the Texas Health and Safety Code (the "Code"). *See* Tex. Health & Safety Code Ann. §§ 321.001–.003, 571.003 (West Supp.2001). Appellants contend that the Code does not reflect the clear and unambiguous waiver of their immunity from suit. Appellees answer that the legislature expressly waived immunity from suits based on violations of the Code by providing that a patient harmed while under the care of a mental health facility "may sue" the facility for damages and other relief. *See id.* § 321.003(b).

Code section 321.003 reflects the legislature's clear and unambiguous waiver of both immunity from liability and immunity from suit. *Id.* § 321.003. Subsection (a) waives immunity from liability, while subsection (b) waives immunity from suit:

(a) A treatment facility or mental health facility that violates a provision of, or a rule adopted under, this chapter, Subtitle C of Title 7 [Code section 571.001, *et seq.*], or Chapter 241, 462, 464, or 466 *is liable* to a person receiving care or treatment in or from the facility who is harmed as a result of the violation.

(b) A person who has been harmed by a violation *may sue* for injunctive relief, damages, or both.

*Id.* § 321.003(a), (b) (emphasis added) (footnote omitted).[3]

The Code requires, *inter alia*, the Texas Board of Mental Health and Mental Retar-

---

**3.** Subsections (c) and (d) set forth the damages that a successful plaintiff may recover.

*See* Tex. Health & Safety Code Ann. § 321.003(c), (d) (West Supp.2001).

dation to adopt a "patient's bill of rights" governing inpatient mental health facilities for the purpose of protecting the health, safety, and rights of their patients, *id.* § 321.002(a), and the board has done so. *See* 25 Tex. Admin. Code §§ 404.151–.167 (2000). The patient's bill of rights provides that persons receiving mental health services from such facilities have "the right to be free from mistreatment, abuse, neglect, and exploitation." *Id.* § 404.154(24). It is undisputed that the appellees have alleged violations of section 321.003(a) of the Code.[4] Thus, if the Center and Hospital are mental health facilities subject to section 321.003(a), they may be sued pursuant to the provisions of section 321.003(b).

■■■ " 'Mental health facility' has the meaning assigned by Section 571.003." Tex. Health & Safety Code Ann. § 321.001(4). Both the Center and the Hospital are mental health facilities as defined by section 571.003. The Center is "a community center or a facility operated by a community center." *Id.* § 571.003(12)(B). The Hospital is a "mental health facility operated by the [Texas Department of Mental Health and Mental Retardation]." *Id.* § 571.003(12)(A). Giving these Code provisions their plain and ordinary meaning, we construe them in a straightforward manner to mean what they say—that a person harmed by a violation of the patient's bill of rights while under the care of a mental health facility may sue that facility for damages and oth-

er relief. Because the Center and the Hospital are mental health facilities as defined in section 571.003, the legislature has consented in section 321.003(b) to their being sued for alleged violations of section 321.003(a). Any other interpretation would render the statute's language meaningless and of no effect.

We are aware that the Fort Worth Court of Appeals, in direct conflict with our holding today, has recently held that the Code does not waive sovereign immunity for violations of the patient's bill of rights. *See Texas Dep't of Mental Health & Mental Retardation v. Lee,* 38 S.W.3d 862 (Tex.App.—Fort Worth 2001, no pet. h.). The court reasoned that because the term "mental health facility" was "not expressly defined in the statute" and was instead assigned its meaning by section 571.003, the statute did not clearly and unambiguously waive sovereign immunity. *Id.* at 870. In so holding, the court relied on language found in *City of LaPorte v. Barfield,* 898 S.W.2d 288, 292–96 (Tex. 1995) and *Duhart v. State,* 610 S.W.2d 740, 742–43 (Tex.1980). *Lee,* 38 S.W.3d at 870–71. We respectfully disagree.

We do not read *Barfield* and *Duhart* as broadly as our sister court. *Barfield* and *Duhart* involve statutes dissimilar to the Code provisions at issue. In *Barfield,* the supreme court held that the Anti–Retaliation Act, which allowed suits against "a person," did not waive immunity from suit. *See Barfield,* 898 S.W.2d at 294. The Anti–Retaliation Act was passed in 1971 by

4. Karen Rodriguez alleged that she "had a right, inter alia, to be free from abuse, neglect, and exploitation, as provided under Texas statutory law, Tex. Health & Safety Code § 571.001 et seq .... and related regulatory rules, see also, 25 Texas Administrative Code § 404.154(22)." Fiske and Raymond Rodriguez alleged that the "Patient's Bill of Rights provides that any person receiving mental health services has the right to be free from mistreatment, abuse, neglect, and exploitation," "employees or agents at Austin State Hospital were negligent in failing to properly monitor Christopher Rodriguez to prevent a suicide attempt based upon his history," and this "conduct is in violation of the Texas Health and Safety Code § 321.002, § 321.003, § 404.154(24) of the Texas Administrative Code, § 710.4(a)(2)."

the 62nd Legislature. *See id.* at 293. In 1985 the legislature passed the Code Construction Act providing "that in [certain] codes adopted by the 60th or a subsequent Legislature, the word 'person' includes governmental entities." *Id.* at 294 (citing Code Construction Act, Tex. Gov't Code Ann. §§ 311.002, .005(2) (West 1998)). In 1993 the Anti–Retaliation Act was recodified in the labor code, a code to which the Code Construction Act applies. *Id.* However, the recodification was to be "without substantive change." *Id.* In holding that "a person" in the Anti-Retaliation Act did not include governmental entities, the court stated, "Construing the recodification of the Anti-Retaliation [Act] to waive governmental immunity would be not only a substantive but a very significant change." *Id.* Here, the legislature, when it originally enacted chapter 321, made clear its intent that "mental health facility" was to have a consistent meaning throughout the Code. *See* Act of May 25, 1993, 73d Leg., R.S., ch. 705, sec. 1.01, § 321.001(4), 1993 Tex. Gen. Laws 2743, 2743 (codified at Tex. Health & Safety Code Ann. § 321.001(4) (West Supp.2001)).

In *Duhart,* the supreme court rejected a claim that the incorporation of a section of the Workers' Compensation Act into a statute designed to provide workers' compensation insurance for employees of the State Highway Department created a cause of action for exemplary damages.

*See Duhart,* 610 S.W.2d at 742–43. The plaintiff's claim for exemplary damages was based on the legislature's incorporation of fifty-nine sections of the Workers' Compensation Act into a statute providing workers' compensation insurance for highway department employees. *See id.* at 742. However, the supreme court held that the incorporated section itself did not create a cause of action for exemplary damages in the statute it amended; rather, it "merely save[d] an existing one to the extent allowed by law." *Id.* at 743. "There is no reference in the amendment or its enabling clause which indicates an intent to create or recognize a cause of action against the State for exemplary damages." *Id.* at 742.

*Barfield* and *Duhart* both involve the effect of subsequently enacted, disparate statutes on earlier, specific legislation. They neither apply to nor control the interpretation of the Code provisions before us. The incorporation or adoption by reference of the mental health facilities to be subject to suit here occurred at the time the legislature passed the original statute creating liability. The Code's statutory scheme is not similar to those at issue in *Barfield* and *Duhart.*

█ Finally, appellants invite this Court to delve into the legislative history of these sections of the Code.[5] Appellants argue that such history reveals that the legislature did not intend to waive immuni-

---

5. Appellants also posit a rather tenuous argument that since the definition of a "mental health facility" includes facilities operated by federal agencies, *see* Tex. Health & Safety Code Ann. § 571.003(12)(A) (West Supp. 2001), the legislature could not have intended that this definition of a "mental health facility" be used to define who a person may sue, *see id.* § 321.003, because the legislature cannot waive immunity for federal agencies. In addition, they assert that an "administrative rights-protection process" already exists to redress violations by MHMR and community

facilities. These together, argue appellants, create an ambiguity. *See Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 133–34 (Tex.1994). Extrinsic aids, including legislative history, may be used to interpret statutes that are ambiguous. *See id.; Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993); *Citizens Nat'l Bank v. Calvert,* 527 S.W.2d 175, 180 (Tex.1975). The statutory provisions before us are clear and unambiguous, and we do not accept appellants' contrary argument.

ty from section 321.003 suits. The Center contends that its inability "to locate any discussion or consideration at all of the issue of governmental immunity in the legislative history of § 321" clearly indicates that the legislature did not intend waiver. The Hospital argues that the "legislative history is replete with references to abuses at private, not governmental, facilities," thus the legislature only intended to provide for suits against private facilities.

 Sources of legislative history in Texas are notoriously incomplete and unreliable. The goal of statutory construction is to give effect to the intent of the legislature, and courts accomplish this by looking to the plain and common meaning of the words and terms the legislature uses. *See Cornerstones,* 865 S.W.2d at 939. "When a statute is clear and unambiguous, courts need not resort to rules of construction or extrinsic aids to construe it, but should give the statute its common meaning." *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997). Because the legislature has spoken clearly, we will look no further than the statute itself. Moreover,

> [c]ourts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced or strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 70 (1920) (cited by *Agbor,* 952 S.W.2d at 505).

Having determined that section 321.003 clearly and unambiguously waives sovereign immunity from suit, we overrule appellants' issues and affirm the district courts' denials of the appellants' pleas to the jurisdiction.

PATTERSON, Justice.

I concur in the result of the majority's decision.