**BEAUMONT STATE CENTER,**
**Appellant,**

v.

**Donald KOZLOWSKI as Next Friend**
**of Byron Allen, Appellee.**

**No. 09–01–315 CV.**

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 9, 2002.

Decided Feb. 14, 2002.

John Cornyn, Atty. Gen., Lisa R. Eskow, Asst. Solicitor Gen., Austin, for appellant.

Brett S. Thomas, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

This is an interlocutory appeal pursuant to Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp.2002). Beaumont State Center (appellant) contends the trial court erred in denying its Plea to the Jurisdiction and Motion to Dismiss. Appellee's second amended original petition alleges that various negligent acts and omissions on appellant's part were the proximate cause of his injuries and damages. Appellee's cause of action is based upon alleged violations of 25 Tex. Admin. Code §§ 404.154–404.155 (2001), and of Chapter 321 of the Texas Health and Safety Code, Tex. Health & Safety Code Ann. §§ 321.001–321.004 (Vernon 2001).[1] In a case essentially involving the identical issue, we affirmed the trial court's denial of the governmental entity's plea to the jurisdiction. *See Spindletop MHMR v. Doe*, 54 S.W.3d 893, 897 (Tex.App.-Beaumont 2001, pet. filed). We re-affirm our holdings in *Spindletop* and find them fully applicable to the issues raised in the instant case. We write further only to address two arguments not fully raised in *Spindletop*.

■ Contained in the excellent brief filed by appellant are two points not fully before us in *Spindletop*. The first, located within the first appellate issue, essentially contends that the legislative history of Chapter 321 indicates the statute was intended to be applicable to *private* mental health facilities only. Appellant's brief contains a copy of the bill analysis of Senate Bill (S.B.) 205, the bill that included, *inter alia*, the provisions of Chapter 321. Under the descriptive heading *"BACKGROUND,"* the following paragraphs appear:

> The Senate Interim Committee on Health and Human Services recently conducted a lengthy study of private psychiatric and substance abuse facilities in Texas. Three public hearings and an enormous volume of mail and telephone calls revealed surprising and sometimes shocking activities taking place in certain private treatment facilities.
>
> Among the most common complaints heard by the committee was the practice of holding a voluntary patient against his or her will, using the "96 hour rule" as justification of the act. Current law states that a patient for release may be held up to 96 hours following his or her release; certain facilities told patients they were required to stay for 96 hours following the request, enabling the facilities to obtain additional insurance benefits.
>
> Other common complaints included deceptive or misleading advertising and marketing practices and the use of mar-

---

1. Appellee's second amended original petition actually alleges a violation of "Sections 321.002–.004 of the Texas Administrative Code." Technically, there are no sections 321.002–321.004 in the Texas Administrative Code. There appears to be no confusion among the parties, however, as a subsequent instrument filed by appellee, "Plaintiff's Response To Defendant's Motion To Dismiss And Plea To The Jurisdiction," correctly cites the Texas Health and Safety Code with regard to the provisions of Chapter 321. Appellant's subsequent reply to said response correctly joins the issue. Pleadings are to be construed so as to do substantial justice. Tex.R. Civ. P. 45(d). We therefore construe appellee's second amended original petition to allege a violation of "Sections 321.002–321.004" of the Texas Health and Safety Code, and not the Texas Administrative Code.

keting personnel in positions more appropriately suited for counselors.

The regulatory agencies involved in the process—the Department of Mental Health and Mental Retardation (TXMHMR), the Department of Health (TDH), the Alcohol and Drug Abuse Commission (TCADA) and the Department of Insurance (TDI)—told committee members their enforcement capabilities needed to be strengthened in order to halt the abuses taking place. The committee also found that TXMHMR, TDH and TCADA received a relatively small amount of information relating to the service provided in the facilities they regulate, including information on controversial practices such as electroconvulsive therapy.

Immediately beneath this "background" information is a paragraph entitled, *"PURPOSE,"* which provides the following:

As enrolled, S.B. 205 requires specific boards to adopt a patient's bill of rights; authorizes appropriate boards to set standards for marketing and advertising activities of certain treatment facilities, including the use and operation of telephone counseling and referral services; establishes administrative, civil and criminal penalties for laws and rules governing the operation of certain facilities; changes the procedures required for discharge of voluntary patients from certain facilities; authorizes certain boards to set standards for intake, assessment and admission of patients to treatment facilities; sets standards for the transfer or referral of a patient from a private faculty [sic] to a public facility; establishes standards for the use of electroconvulsive and similar therapies and requires certain facilities to submit in-

formation relating to mental health and chemical dependency data.

The impetus for the bill was apparently a response to information received during Senate Committee hearings on conditions existing in private mental health facilities. Nevertheless, nothing in the language taken from the "purpose" of S.B. 205 even hints that the particular provisions at issue, Chapter 321, were meant to be applied *exclusively* to private mental health facilities only. The language from the "purpose" paragraph applies the provisions of S.B. 205 to "certain treatment facilities," "certain facilities," and "treatment facilities." It would have been a simple matter to have placed clear language of exclusivity into the "purpose" paragraph explicitly limiting application of S.B. 205 to *private* facilities, or *private* treatment facilities. As such, we find the language of the bill analysis of no assistance to appellant with regard to this argument.

The second appellate issue argues that, even if Chapter 321 does provide a legislative waiver of immunity, Chapter 321 does not apply to appellant because appellant is a "mental retardation facility," not a "mental health facility" as is ultimately defined under the provisions of Chapter 321. At the outset, we agree with appellant that contained within Title 7, entitled "Mental Health And Mental Retardation,"[2] are the two subtitles, *viz:* "Subtitle C. Texas Mental Health Code," and "Subtitle D. Persons With Mental Retardation Act."[3] Yet, appellant does not point to any statutory or code provisions that indicate the "Beaumont State Center" is classified as a mental retardation facility. Indeed, in a very helpful footnote contained in its reply

---

**2.** *See* TEX. HEALTH & SAFETY CODE ANN. §§ 531.001–615.002 (Vernon 1992 & Supp. 2002).

**3.** *See* TEX. HEALTH & SAFETY CODE ANN. §§ 571.001, 591.001 (Vernon 1992).

brief, appellant does refer us to section 532.001 of the Health and Safety Code, which lists specific facilities operated by the Texas Department of Mental Health and Mental Retardation (T.D.M.H.M.R.). As appellant's brief points out, the 77th Legislature amended section 532.001 to delete the Beaumont State Center, and as of midnight, June 13, 2001, the Beaumont State Center ceased to exist.[4] Nevertheless, the facilities listed along with the Beaumont State Center as those operated by T.D.M.H.M.R.[5] included the Rusk State Hospital, a facility well-known in Texas not for its services to the mentally retarded, but to individuals with significant "mental illness," as that term is defined under section 571.003(14).[6] Therefore, we essentially have nothing to indicate that appellant is classified exclusively as a "mental retardation facility" except appellant's bare assertions. Ultimately, however, we do not rely on appellant's lack of proof of its status as a mental retardation facility in overruling this appellate issue. Our construction of Chapter 321 as a whole, and section 321.003 specifically, precludes our limiting the statute in the manner appellant argues here.

█ When reviewing an interlocutory appeal of a trial court's denial of a plea to the jurisdiction, appellate courts construe the pleadings in favor of the plaintiff and look to the pleader's intent. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). If the plaintiff alleges sufficient facts in its petition to establish a waiver of immunity by the leg-

islature, the reviewing court must affirm the trial court's order denying the plea to the jurisdiction. *See Montgomery County v. Fuqua*, 22 S.W.3d 662, 665 (Tex.App.-Beaumont 2000, pet. denied). As appellant so correctly points out in its brief, in construing a statute, a court may consider the consequences of a particular construction. *See* TEX. GOV'T CODE ANN. § 311.023(5) (Vernon 1998). Naturally, appellant goes on to argue that construing section 321.003 as waiving sovereign immunity would lead to absurd consequences. *See* TEX. HEALTH & SAFETY CODE ANN. § 321.003 (Vernon 2001).

█ As was the case in *Spindletop*, neither party contends the plain language of section 321.003 is ambiguous in any way. It is only when a reviewing court's application of the literal language of a statute produces an absurd result would said court then be permitted to ignore the literal language. *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). In the instant case, we can perceive no more absurd result than to interpret the very broad language, as well as the obviously prophylactic intent of the legislature, of Chapter 321, and specifically section 321.003, to limit its application exclusively to *private* mental health and mental retardation facilities, or to limit its application to facilities that do not provide services *solely* to the mentally retarded.

While patients and clients of *state* operated mental health and mental retardation facilities may have recourse to administrative and/or injunctive processes when se-

---

4. Act of May 22, 2001, 77th Leg., R.S., ch. 893, § 1, sec. 532.001(b), 2001 Tex. Gen. Laws 1786.

5. *See* TEX. HEALTH & SAFETY CODE ANN. § 532.001(b) (Vernon Supp.2001).

6. "Mental illness" means an illness, disease, or condition, other than epilepsy, senility, alcoholism, or mental deficiency, that:

(A) substantially impairs a person's thought, perception of reality, emotional process, or judgment; or
(B) grossly impairs behavior as demonstrated by recent disturbed behavior.

*See* TEX. HEALTH & SAFETY CODE ANN. § 571.003(14) (Vernon Supp.2002).

vere abuse and/or neglect occurs, this Court will not say that section 321.003 *does not permit* them to also sue for damages, but *does permit* a patient in a *private* facility (or a patient in a facility that combines treatment for mental illness and mental retardation) to file suit for damages. We simply find nothing in the plain language of any of the provisions of Chapter 321, and specifically section 321.003, that would permit us to make such a distinction.[7] Therefore, construing the pleadings favorably to appellee, we cannot say the trial court erred in denying the appellant's plea to the jurisdiction. Appellate issues one and two are overruled. The order denying the plea to the jurisdiction is affirmed.

AFFIRMED.

---

7. Appellant candidly admits it is reasonable to believe that the legislature would want *all* mental health facilities in Texas, whether governmental or private, to comply with the substantive provisions of the "patient's bill of rights." Nevertheless, appellant goes on to contend it is not uncommon for the State to require those seeking redress from the State to pursue their claims in an administrative forum rather in the courtroom, citing *General Serv. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 595–97 (Tex.2001). However, as the Court in *Little–Tex* recognized, in response to a number of breach of contract lawsuits against the State, the legislature enacted Chapter 2260 in the Government Code. *Id. See* TEX. GOV'T CODE ANN. §§ 2260.001–2260.108 (Vernon 2000 & Supp.2002). A reading of the provisions of Chapter 2260 indicates the Legislature had no trouble in making it abundantly clear that, as to contractual claims against the State, it had no intention of waiving sovereign immunity from either suit or liability. *See* section 2260.006— "This chapter does not waive sovereign immunity to suit or liability;" TEX. GOV'T CODE ANN. § 2260.006 (Vernon 2000), and section 2260.007, which provides:

(a) The legislature retains the authority to deny or grant a waiver of immunity to suit against a unit of state government by statute, resolution, or any other means the legislature may determine appropriate.

(b) This chapter does not:

(1) divest the legislature of the authority to grant permission to sue a unit of state government under terms that the legislature may specify in the measure granting the permission;

(2) require that the legislature, in granting or denying permission to sue a unit of state government, comply with this chapter; or

(3) limit the effect of a legislative grant of permission to sue a unit of state government unless the grant itself provides that this chapter may have that effect.

TEX. GOV'T CODE ANN. § 2260.007 (Vernon Supp.2002).

It is obvious that the legislature is able to conclusively and precisely put to rest the issue of waiver of immunity when it chooses to do so.