The CENTER FOR HEALTH CARE SERVICES, Appellant,

v.

Michael QUINTANILLA, Appellee.

No. 04–01–00269–CV.

Court of Appeals of Texas, San Antonio.

July 10, 2002.

Rehearing Overruled Sept. 10, 2002.

---

14. *Id.* at 68, 112 S.Ct. 475.

Alberto J. Pena, Susan C. Rocha, Denton, Navarro & Bernal, P.C., San Antonio, for Appellant.

Mark Louis Greenwald, Tinsman & Houser, Inc., San Antonio, for Appellee.

Sitting en banc: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, and SANDEE BRYAN MARION, Justice.

Opinion by: ALMA L. LÓPEZ, Justice.

The Center for Health Care Services ("the Center"), appeals from the denial of its plea to the jurisdiction of the trial court. On our own initiative, we consider this appeal en banc to determine whether the Texas Health & Safety Code "Whistleblower" provision waives the Center's sovereign immunity. We conclude that it does and affirm the trial court's denial of the Center's plea to the jurisdiction on Quintanilla's Texas Health and Safety Code claim and remand the case for further proceedings on that claim. However, we reverse the trial court's denial of the Center's plea to the jurisdiction on Quintanilla's Whistleblower Act claim.

## BACKGROUND

The Center operates a publicly-funded, state-supported facility that provides mental health and mental retardation services. Michael Quintanilla was an employee of the Center. After the Center fired Quintanilla, he sued the Center, alleging claims pursuant to Texas Health and Safety Code section 161.134, Texas Whistleblower Act section 554.001, and the *Sabine Pilot* exception to the Texas employment-at-will doctrine.[1] The Center filed a general denial, and asserted defenses to and limitations of the Whistleblower Act, and the affirmative defense of sovereign immunity. The Center also filed a plea to the jurisdiction, alleging Quintanilla's claims did not invoke the trial court's subject matter jurisdiction. The trial court denied the plea, and this appeal by the Center ensued.

## STANDARD OF REVIEW

We review a trial court's ruling on a plea to jurisdiction de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). In determining whether jurisdiction exists, we accept the allegations in the pleadings as true and construe them in favor of the pleader. *Texas Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). We must also consider

1. On appeal, Quintanilla withdraws his *Sabine Pilot* claim.

evidence relevant to jurisdiction when it is necessary to resolve the jurisdictional issue raised. *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000).

■ Sovereign immunity, unless waived, protects the State from lawsuits for damages. *Federal Sign v. Texas So. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). The doctrine of sovereign immunity encompasses immunity from suit and immunity from liability. *Id.* Immunity from suit bars a suit against the State unless the Legislature expressly gives consent. *Id.* Immunity from liability protects the State from judgments even if the Legislature has expressly given consent to sue. *Id.* A party may establish consent by referencing a legislative statute or a resolution granting express legislative permission. *General Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). Texas courts require clear and unambiguous legislative expression before they will hold that sovereign immunity has been waived. *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex.2000).

## TEXAS WHISTLEBLOWER ACT

■ The Whistleblower Act has a two-fold purpose: (1) protect public employees from retaliation by their employer when, in good faith, the employee reports a violation of law; and (2) secure lawful conduct on the part of those who direct and conduct the affairs of public bodies. *Gregg County v. Farrar*, 933 S.W.2d 769, 775 (Tex.App.-Austin 1996, writ denied); *see also Castaneda v. Texas Dep't of Agric.*, 831 S.W.2d 501, 503 (Tex.App.-Corpus Christi 1992, writ denied). In order to achieve this purpose, the statutory cause of action constitutes a waiver of sovereign immunity. *See Texas Dep't of Human Servs. v. Green*, 855 S.W.2d 136, 143 (Tex. App.-Austin 1993, writ denied). However, the Legislature intended that the governmental entity should be afforded the opportunity to correct its own errors by resolving disputes before being subjected to the expense and effort of litigation. *Gregg County*, 933 S.W.2d at 775. Therefore, under the Whistleblower Act, a public employee must initiate action under the grievance or appeal procedures of the employing state entity relating to suspension or termination of employment before suing under the Act. TEX. GOV'T CODE ANN. § 554.006(a) (Vernon Supp.2001). The employee must invoke the applicable grievance or appeal procedures no later than the ninetieth day after the date on which the alleged violation occurred. *Id.* § 554.006(b).

The Center has a grievance policy that sets forth the procedures to be followed when an employee expresses either a formal or informal grievance. The policy states that the Center's procedures "are intended ONLY for use by regular Center employees. Other persons may present oral or written complaints to a Program Director, a Department Head, the Clients' Rights Officer, or the Personnel Director, as appropriate." On appeal, Quintanilla attempts to circumvent the grievance procedures and the requirements of Section 554.006 by asserting that he is not subject to the Center's grievance procedures because he falls within the category of "other persons," and that the Center did not specially except to any pleading defect on his part.

Quintanilla relies on *Univ. of Houston v. Elthon*, 9 S.W.3d 351, 355 (Tex.App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.), for his argument that he satisfied the Center's grievance requirements by orally reporting his complaint to the Board of Directors. He also relies on *Curbo v. State, Office of the Governor*, 998 S.W.2d 337, 341 (Tex. App.-Austin 1999, no pet.), to support his contention that the requirements of Sec-

tion 554.006 were met if he reasonably believed the Center's grievance policy did not apply to him. Notwithstanding the fact that the Board of Directors is not one of the appropriate entities to which "other persons" may present a complaint, Quintanilla's reliance on these cases is misplaced because, in both cases, the employees' pleadings asserted the jurisdictional requirements. *See Elthon,* 9 S.W.3d at 356; *Curbo,* 998 S.W.2d at 342.

■■■■ A plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject matter jurisdiction. *See Texas Ass'n of Bus.,* 852 S.W.2d at 446. When deciding whether to grant a plea to the jurisdiction, the trial judge must look solely to the allegations in the petition and must accept these allegations as true. *Curbo,* 998 S.W.2d at 341. Dismissing a cause of action for lack of subject matter jurisdiction is only proper when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court. *Liberty Mut. Ins. Co. v. Sharp,* 874 S.W.2d 736, 739 (Tex.App.-Austin 1994, writ denied).

In his pleadings, Quintanilla did not allege he initiated an action under the Center's grievance procedures, that such procedures did not apply to him, and that he orally reported his complaint to the Board of Directors. The Center filed two pleas to the jurisdiction. In its first plea, filed after Quintanilla's second amended petition, the Center argued that the court lacked subject matter jurisdiction because Quintanilla did not initiate the Center's available grievance procedures. A few days later, Quintanilla filed his third amended petition, but he did not add any allegations that he had initiated or attempted to initiate the grievance procedures and he did not state he orally complained to the Board of Directors. The Center then filed its second plea to the

jurisdiction, again asserting that the court lacked subject matter jurisdiction because Quintanilla did not initiate the Center's available grievance procedures. Thus, Quintanilla had two opportunities to cure the jurisdictional defects in his pleadings, but he did not do so. *Texas Ass'n of Bus.,* 852 S.W.2d at 446 (review of only the pleadings to determine subject matter jurisdiction is sufficient in the trial court because a litigant has a right to amend to attempt to cure pleading defects if jurisdictional facts are not alleged; failing that, the suit is dismissed). Therefore, we hold that Quintanilla's third amended petition was facially insufficient to confer jurisdiction on the trial court, and the trial court erred in denying the Center's plea to the jurisdiction on Quintanilla's Whistleblower Act claim.

## TEXAS HEALTH & SAFETY CODE "WHISTLEBLOWER" PROVISION

■■■■ Quintanilla also asserts he was fired in violation of the Texas Health and Safety Code's "whistleblower" provision, which provides that:

A hospital, mental health facility, or treatment facility may not suspend or terminate the employment of or discipline or otherwise discriminate against an employee for reporting to the employee's supervisor, an administrator of the facility, a state regulatory agency, or a law enforcement agency a violation of law, including a violation of this chapter, a rule adopted under this chapter, or a rule adopted by the Texas Board of Mental Health and Mental Retardation, the Texas Board of Health, or the Texas Commission on Alcohol and Drug Abuse.

TEX. HEALTH & SAFETY CODE ANN. § 161.134(a) (Vernon 2001). A hospital, mental health facility, or treatment facility that violates Section 161.134(a) is liable to

the person discriminated against. *Id.* § 161.134(b). A person who has been discriminated against may sue for injunctive relief, damages, or both. *Id.*

In Section 161.134, the term "mental health facility" has the meaning assigned by Section 571.003. *See id.* § 161.131(7). "Mental health facility" is defined as:

(A) an inpatient or outpatient mental health facility operated by the department, a federal agency, a political subdivision, or any person;

(B) a community center or a facility operated by a community center; or

(C) that identifiable part of a general hospital in which diagnosis, treatment, and care for persons with mental illness is provided.

*Id.* § 571.003(12) (Vernon 1992 & Supp. 2002).

Quintanilla argues that the Legislature waived a state-operated mental health facility's immunity because the term "mental health facility" includes those facilities operated by the State. The Center argues that incorporating the definition of "mental health facility" from Section 571.003(12) into Section 161.134 does not indicate either an explicit or implicit waiver of governmental immunity.

Four Texas courts have addressed whether the incorporation of Section 571.003 definitions into other Health and Safety Code sections that impose liability for violations of the Code constitutes a waiver of sovereign immunity, and they are split. *See Central Counties Ctr. for Mental Health & Mental Retardation Servs. v. Rodriguez,* 45 S.W.3d 707 (Tex. App.-Austin 2001, pet. filed) (finding waiver); *see also Spindletop MHMR v. Doe,* 54 S.W.3d 893 (Tex.App.-Beaumont 2001, rule 53.7(f) motion filed) (following *Rodriguez* ); *Wichita Falls State Hosp. v. Taylor,* 48 S.W.3d 782 (Tex.App.-Waco 2001, pet. granted) (following *Rodriguez* ); *see also*

*Beaumont State Center v. Kozlowski,* 70 S.W.3d 345 (Tex.App.-Beaumont 2002, n.p.h.) (reaffirming *Spindletop MHMR* and holding that the legislative history of Chapter 321 of the Texas Health and Safety Code did not intend its application to be limited to private mental health facilities only); *contra Texas Dept. Mental Health & Mental Retardation v. Lee,* 38 S.W.3d 862 (Tex.App.-Fort Worth 2001, pet. filed) (finding no waiver). Although the Health and Safety Code liability section discussed in these cases is different from the one at issue here, the language of the two sections is similar enough to warrant this court's review of the cases.

In each of the four cases, the plaintiffs sued a government-operated mental health facility, alleging violations under the "Patient Bill of Rights," which governs inpatient mental health facilities for the purpose of protecting the health, safety, and rights of their patients. TEX. HEALTH & SAFETY CODE ANN. § 321.002 (Vernon 2001). The courts were required to construe Section 321.003 to determine whether that section waived immunity as to those facilities that violated Section 321.002. Section 321.003 provides,

(a) A treatment facility or mental health facility that violates a provision of, or a rule adopted under, this chapter, Subtitle C of Title 7, or Chapter 241, 462, 464, or 466 is liable to a person receiving care or treatment in or from the facility who is harmed as a result of the violation.

(b) A person who has been harmed by a violation may sue for injunctive relief, damages, or both.

*Id.* § 321.003(a), (b).

The courts finding waiver first determined that the defendant-facilities were "mental health facilities" subject to Section 321.003(a) by looking to the meaning as-

signed to the phrase contained in Section 571.003. *Rodriguez*, 45 S.W.3d at 711; *see also Taylor*, 48 S.W.3d at 784. The *Rodriguez* court held:

> Giving these Code provisions their plain and ordinary meaning, we construe them in a straightforward manner to mean what they say—that a person harmed by a violation of the patient's bill of rights while under the care of a mental health facility may sue that facility for damages and other relief. Because the Center and Hospital are mental health facilities as defined in section 571.003, the legislature has consented in section 321.003(b) to their being sued for alleged violations of section 321.003(a). Any other interpretation would render the statute's language meaningless and of no effect.

*Rodriguez*, 45 S.W.3d at 711.

The Fort Worth court of appeals in *Lee* and the dissent in *Taylor* disagreed with this analysis, holding that the incorporation of definitions into Section 321.003 did not indicate a clear and unambiguous legislative intent to waive immunity. *Lee*, 38 S.W.3d at 870; *Taylor*, 48 S.W.3d at 789 (Gray, J., dissenting). In arriving at its conclusion, the *Lee* court relied on the rules of construction followed by the Texas Supreme Court in *City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex.1995), and *Duhart v. State*, 610 S.W.2d 740 (Tex. 1980), and held,

> Applying the rules of construction followed by the supreme court in *Duhart* and *City of LaPorte*, we hold that the

mere incorporation in section 321.001 ["Definitions"] of another statute that defines treatment facility and mental health facility to include public facilities does not, without more, manifest a clear legislative intent to the contrary to *waive immunity*. While the statute evidences the legislature's intent to authorize actions for violations of the patient's bill of rights against private facilities licensed by the state health care regulatory agencies, the statute does not, as it might, clearly express an intent to *waive immunity* by authorizing such actions against governmental entities. Indeed, the legislative history of the statute indicates that the statute was enacted to address clear abuse that had reportedly occurred in *private* mental health facilities. There is nothing in the statute's history to suggest that the legislature was even aware of the existence of similar abuse in public facilities. Thus, we hold that the statute possesses meaning and purpose absent waiver of immunity.

*Lee*, 38 S.W.3d at 870–71 (emphasis in original).[2]

 We agree with the analysis employed by the *Rodriguez* court, and we apply that court's reasoning to our consideration of whether the Legislature has waived immunity under Section 161.134. Further, we follow the mandate of the Texas Supreme Court in *Kerrville State Hospital* that in determining questions of immunity for state agencies, we must look to whether the statute makes any sense if immunity is not waived. 28 S.W.3d at 6.

---

**2.** The *Taylor* dissent made a slightly different argument, concluding that if one carried the majority's analysis to its logical conclusion, that analysis must be applied equally to each entity referenced in the adopted definition. 48 S.W.3d at 787. The dissent stated that the Patient Bill of Rights only applied to inpatient facilities, but the definition of "mental health facility" included both inpatient and outpatient facilities. Thus, under the majority's analysis, outpatient mental health facilities would be liable for violations of the bill of rights—a conclusion contrary to Section 321.002(a). *Id.* at 787. Furthermore, under the majority's analysis, federal agencies could be sued, and the Texas Legislature has no right to waive the federal government's immunity. *Id.*

In *Kerrville State Hospital,* the Supreme Court noted that the "clear and unambiguous requirement is not an end in itself, but merely a method to guarantee that courts adhere to legislative intent. Therefore, the doctrine should not be applied mechanically to defeat the true purpose of the law." *Id.* at 3.

 Health and Safety Code sections imposing liability, such as sections 161.134 and 321.003, refer generally to hospitals, mental health facilities, and treatment facilities. The definitions of "hospital," "mental health facility" and "treatment facility" in the Health and Safety Code include facilities operated by the state. *See* HEALTH & SAFETY CODE ANN. §§ 61.002(10); 106.201(1); 161.131(3),(7),(10); 241.003(5),(7),(15); 312.002(5); 464.001(5); 571.003(5), (12) (Vernon 1999, 2001 & Supp.2002). Section 161.134 would make no sense if immunity is not waived because such an interpretation would require a convoluted reading of the definitional and liability sections of the Health and Safety Code. For example, a "mental health facility" would be construed as "an inpatient or outpatient mental health facility operated by the department, a federal agency, a political subdivision, or any person" except in those instances where a person is seeking to impose liability on the state under another section of the Code, in which case "mental health facility" *only* includes privately-run facilities. The Legislature placed no such limitations on either the definitional or liability sections of the Health and Safety Code. Therefore, we are left with a plain reading of the statute's language, which is that any facility meeting the definition of "hospital," "mental health facility" and "treatment facility" in the Health and Safety Code is subject to liability imposed under the Code.

The Center argues that our opinion should follow *Barfield* and *Duhart.* How-

ever, unlike those cases, this case does not involve incorporation of disparate statutes into another statute. The incorporation of the definition of mental health facilities into the various provisions of the Health and Safety Code specifying those entities subject to suit occurred at the same time the Legislature enacted the Code's statutory scheme creating liability. *Rodriguez,* 45 S.W.3d at 712. Therefore, we hold that the Legislature waived sovereign immunity from suit for violations of Health and Safety Code section 161.134, and the trial court did not err in denying the Center's plea to the jurisdiction on Quintanilla's Health and Safety Code claim.

## CONCLUSION

We reverse the trial court's order denying the Center's plea to the jurisdiction on Quintanilla's Whistleblower Act claim under Government Code section 554.001 and we dismiss that claim for lack of jurisdiction. We affirm the trial court's denial of the Center's plea to the jurisdiction on Quintanilla's Health and Safety Code section 161.134 claim and remand for further proceedings on that claim.

Concurring and dissenting opinion by: KAREN ANGELINI, Justice, joined by PAUL W. GREEN, Justice and SARAH B. DUNCAN, Justice.

KAREN ANGELINI, Justice, concurring and dissenting.

I concur with the majority's holding that the trial court erred in denying the Center's plea to the jurisdiction on Quintanilla's Whistleblower Act claim. However, I believe the Center enjoys immunity from suit under Texas Health and Safety Code section 161.134. Therefore, I respectfully dissent from that portion of the majority's opinion.

I agree with the analysis in *Texas Dep't of Mental Health & Mental Retardation v. Lee*, 38 S.W.3d 862 (Tex.App.-Fort Worth 2001, pet. filed). The mere incorporation of a definition from one section of the Health and Safety Code into another section does not, without more, indicate a clear and unambiguous expression of the Legislature's intent to waive immunity. *Id.* at 870–71; *see Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 6 (Tex.2000) (concluding that State Applications Act section 15(b) is clearer expression of intent to waive immunity than "mere incorporation" of Anti Retaliation law into Act); *Duhart v. State*, 610 S.W.2d 740, 742–43 (Tex.1980) (incorporation of one provision into another law, without more, did not clearly and unambiguously waive the State's immunity from liability for exemplary damages). Accordingly, I would hold that the Legislature did not waive sovereign immunity from suit for violations of Health and Safety Code section 161.134, and that the trial court erred in denying the Center's plea to the jurisdiction on Quintanilla's Health and Safety Code claim.