
OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

JOHN CORNYN

October 29, 2002

Mr. Jeff Moseley
Executive Director
Texas Department of Economic Development
P.O. Box 12728
Austin, Texas   78711-2728

Opinion No.  JC-0567

Re:  Whether a business located in an enterprise zone and presently designated an "enterprise project" and allocated the maximum jobs and tax benefits may receive an additional and concurrent enterprise project designation in the same zone and receive an additional maximum job allocation and the related tax benefits   (RQ-0542-JC)

Dear Mr. Moseley:

The Texas Enterprise Zone Act, chapter 2303 of the Government Code (the "Act"), TEX. GOV'T CODE ANN. §§ 2303.001-.516 (Vernon 2000 & Supp. 2002), authorizes the Texas Department of Economic Development (the "Department") to designate for a five-year period a qualified business located in an enterprise zone as an "enterprise project." An enterprise project is eligible for an allocation of jobs not to exceed 250 in number and to a sales and use tax refund for each job not to exceed the aggregate amount of $250,000 for the fiscal year and $1,250,000 for the five-year designation period.  You ask whether a business located in an enterprise zone and presently designated as an "enterprise project" and allocated the maximum jobs and tax benefits may receive an additional and concurrent enterprise project designation in the same zone and an additional maximum job allocation and the related tax benefits.[1]  We conclude in the negative.

To provide a legal context for your question, we begin with a brief review of the enterprise-project-designation provisions.  The Department administers and monitors the implementation of the Act. See TEX. GOV'T CODE ANN. § 2303.051 (Vernon 2000).  The Act's purpose is to provide tax and other incentives to encourage private businesses to locate and invest in severely distressed areas of the state designated by the Department as "enterprise zones." See id. §§ 2303.002, .107. An "enterprise project" located in an enterprise zone is eligible to receive, among other economic and regulatory benefits, state and local tax refunds. See id. §§ 2303.501-.508 (Vernon 2000 & Supp. 2002).  Accordingly, the Act authorizes the Department to designate a qualified business nominated by the governing body of an enterprise zone as an "enterprise project." See id. §§ 2303.405 (Vernon 2000), .406 (Vernon Supp. 2002).  To qualify for the designation, in general, the business must

[1]See Letter from Jeff Moseley, Executive Director, Texas Department of Economic Development, to Honorable John Cornyn, Texas Attorney General (May 6, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

conduct or be committed to conducting a trade or business in the enterprise zone; employ a minimum number of individuals who are residents of the enterprise zone or who are economically disadvantaged; and the nominating governing body must demonstrate a high level of cooperation among the public, private, and neighborhood entities in the enterprise zone and that the designation of the business will significantly contribute to the zone's development. *See id.* § 2303.406(a) (Vernon Supp. 2002). The Department may designate a maximum of four or six enterprise projects for each nominating governing body, depending on the population and the jurisdiction of the governing body, during a biennium. *See id.* § 2303.406(d). An enterprise project designation is effective for five years. *See id.* § 2303.408 (Vernon 2000).

An enterprise project is eligible for a refund of, among other taxes, state sales and use taxes related to the number of jobs allocated to the enterprise project by the Department. *See id.* §§ 2303.407, .504(a)(1) (Vernon Supp. 2002); TEX. TAX CODE ANN. § 151.429(a)-(c) (Vernon 2002). When the Department designates a business as an enterprise project, section 2303.407 of the Act directs the Department to "allocate to the project the maximum number of new permanent jobs or retained jobs eligible to be included in a computation of a tax refund for the project[,]" not exceeding the lesser of "250 or a number equal to 110 percent of the number of anticipated new permanent jobs or retained jobs." TEX. GOV'T CODE ANN. § 2303.407 (Vernon Supp. 2002).

Turning to section 151.429 of the Tax Code, subsection (a) provides that an enterprise project is eligible for refunds of sales and use taxes on purchases of certain property and services. *See* TEX. TAX CODE ANN. § 151.429(a) (Vernon 2002). And subsection (b) provides that "an enterprise project qualifies for a refund of taxes under this section [151.429] of $5,000 for each new permanent job or job that has been retained by the enterprise project for a qualified employee." *Id.* § 151.429(b). Finally, subsection (c) limits the total tax refund that an enterprise project may apply for and receive as follows:

> The total amount of tax refund that an enterprise project may apply for in a state fiscal year may not exceed $250,000. If an enterprise project qualifies in a state fiscal year for a refund of taxes in an amount in excess of the limitation provided by this subsection, it may apply for a refund of those taxes in a subsequent year, subject to the $250,000 limitation for each year. However, an enterprise project may not apply for a refund under this section after the end of the state fiscal year immediately following the state fiscal year in which the enterprise project's designation as an enterprise project expires or is removed. The total amount that may be refunded to an enterprise project under this section may not exceed the amount determined by multiplying $250,000 by the number of state fiscal years during which the enterprise project created one or more jobs for qualified employees.

*Id.* § 151.429(c).

In sum, under the Act, an enterprise project may not be allocated more than 250 jobs for the purposes of a tax refund. Under the Tax Code, an enterprise project is eligible for a $5,000 sales and use tax refund for each job created or retained. However, an enterprise project may not apply for a total tax refund of more than $250,000 in a fiscal year; if the enterprise project qualifies for more, it may apply for a refund of those taxes in subsequent years before the expiration of the five-year designation period. But it may not receive a total sales tax refund of more than $1,250,000 ($250,000 x 5 years) over the five-year period of designation as an enterprise project.

With the above statutory background, we turn to your request. You inform us that a business previously designated as an enterprise project and allocated the maximum 250 jobs for the purposes of the sales and use tax refund has requested a second enterprise designation and, as we understand it, an additional 250-job allocation for the purposes of the sales tax refund. *See* Request Letter, *supra* note 1, at 2. The second requested designation, you also inform us, is for the same business function[2] and tax entity; in the same enterprise zone; and will be effective concurrently with the previously granted designation. *See id.* You note that the Department "has never been presented with the issue of whether a single business could receive multiple concurrent designations, each with maximum job allocations, in the same zone."[3] *Id.* You specifically ask:

> [W]hether a business that is currently designated as an enterprise project and [that] expects to receive the maximum allowable tax benefit for the current project designation may apply for and receive an additional, concurrent project designation in the same enterprise zone and receive additional tax benefits.

Request Letter, *supra* note 1, at 1.

The Act neither authorizes nor prohibits multiple enterprise project designations. We consider, therefore, whether the express statutory job allocation and tax refund ceilings operate as limitations on multiple enterprise project designations and multiple maximum job and tax benefit allocations. These limitations apply to "enterprise projects." *See* TEX. GOV'T CODE ANN. § 2303.407 (Vernon Supp. 2002); TEX. TAX CODE ANN. § 151.429(a)-(c) (Vernon 2002). The Act, however, does not define "enterprise project." Nonetheless, we must presume that the legislature did not enact meaningless limitations and "enterprise project" has an ascertainable and definite meaning. *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex. 1998)

---

[2]While your letter states that the second designation is for a "new product line," it is unclear what that means. We understand that the phrase does not necessarily describe an additional or new undertaking by the requesting business. Telephone conversation with Tad Curtis, Business Incentives Programs Manager, Texas Department of Economic Development (July 2, 2002).

[3]The impetus for such a request is the 2001 legislative changes to the Act. In 2001, the legislature reduced the number of jobs required to obtain the maximum tax benefits from 625 to 250 jobs. *See* Request Letter, *supra* note 1, at 2; *see also* Act of May 25, 2001, 77th Leg., R.S., ch. 1134, § 1.01, 2001 Tex. Gen. Laws 2519, 2519. The legislature also increased the tax refund amount for each job from $2000 to $5000. *See* Act of May 25, 2001 § 1.06, 2001 Tex. Gen. Laws at 2520.

("[W]e do not lightly presume that the Legislature may have done a useless act."); *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978) ("[I]t is well established that every word in a statute is presumed to have been used for a purpose . . . and that the Legislature did not intend to do a useless thing by putting a meaningless provision in a statute."). We determine that "enterprise project" is the discrete business located or to be located in an enterprise zone; and the statutory limits apply to the business in the particular enterprise zone and preclude the Department from granting a business presently designated an enterprise project and allocated the maximum allowable jobs for the maximum tax benefits in an enterprise zone an additional, concurrent enterprise project designation and additional job allocation in the same enterprise zone.

In ascertaining the meaning of "enterprise project," we are guided by the following rules of statutory construction. In construing a statute, like a court, our objective is to determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). Like a court, we must first consider the statute's plain and common meaning on the presumption that the legislature intended the plain meaning of its words. *See id.* If possible, we must ascertain the legislature's intent from the language it used in the statute and not look to extraneous matters for an intent the statute does not state. *See id.; accord In Re Canales*, 52 S.W.3d 698, 702 (Tex. 2001); *Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex. 2000); *Fitzgerald v. Advanced Spine Fixation*, 996 S.W.2d 864, 865 (Tex. 1999); *Fleming Foods v. Rylander*, 6 S.W.3d 278, 282 (Tex. 1999); *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997); *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex. 1994); *Minton v. Frank*, 545 S.W.2d 442, 445 (Tex. 1976). In determining how the legislature intended its words be interpreted, we look at the entire act, and not a single section in isolation. *See Fitzgerald*, 996 S.W.2d at 866; *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998). We look to legislative history only if a statute is ambiguous. *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991) (en banc); *see also Cent. Counties Ctr. for Mental Health & Mental Retardation Servs. v. Rodriguez*, 45 S.W.3d 707, 713 (Tex. App.–Austin 2001, pet. filed) ("Sources of legislative history in Texas are notoriously incomplete and unreliable. . . . Because the legislature has spoken clearly, we will look no further than the statute itself.").

Under the Code Construction Act, statutory "words and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). "Enterprise project" would not ordinarily denote a "business." *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 940 (1983) (defining "project" as "a specific plan or design" and "a planned undertaking."). However, considering the entire Act and the context that it provides, the term is not employed in its common usage. Instead, "business" is the meaning ascribed to "enterprise project" in the context of the Act.

"Enterprise project," as used in the Act, is a *business* as a whole, rather than parts, particular functions or undertakings of a business. In setting out the procedures for enterprise designation, the Act does not reference or speak in terms of particular undertakings or projects. It consistently speaks in terms of a "business" seeking or granted the enterprise designation. Section 2303.406 of the Act, for instance, states that "the department may designate *a business* as an enterprise project" if the "business is a qualified business." TEX. GOV'T CODE ANN. § 2303.406(a) (Vernon Supp. 2002) (emphasis added). Similarly, section 2303.404(a) authorizes a "qualified business in an enterprise

zone" to request the governing body of the zone to apply to the Department "for designation of *the business* as an enterprise project," *id.* § 2303.404(a) (Vernon 2000) (emphasis added), and section 2303.405(a) authorizes the governing body to apply to the Department "for the designation of *the qualified business* as an enterprise project." *Id.* § 2303.405(a) (emphasis added); *see also id.* § 2303.402(b) ("franchise" or "subsidiary" of business located entirely in enterprise zone and maintaining separate books and records of activity in zone may be certified a "qualified business"). The statutory limitations are also consistently stated in terms of the "businesses" that may be designated enterprise projects. Section 2303.406(d) provides that "the maximum number of *qualified businesses* that the department may designate *as enterprise projects* for each nominating body during the biennium" is either four or six. *Id.* 2303.406(d) (Vernon Supp. 2002) (emphasis added). And section 2303.403 provides that the Department "may not designate more than 85 *businesses* as enterprise projects during any biennium." *Id.* § 2303.403 (emphasis added).

Additionally, the statutory language contemplates that the "business" designated as an enterprise project is the discrete business entity located or to be located in a particular enterprise zone. Again, only a "qualified business" that is "in an enterprise zone" may apply and be designated an enterprise project. *See id.* §§ 2303.404(a) (Vernon 2000), .406(a) (Vernon Supp. 2002). A "qualified business" is "a *person* certified as a qualified business under section 2303.402" of the Act. *Id.* § 2303.003(6) (Vernon 2000) (emphasis added). Section 2303.402 in turn provides that:

> (a) *A person is a qualified business* if the department, for the purposes of state benefits under this chapter, or the governing body of an enterprise zone, for the purposes of local benefits, certifies that:

> (1) *the person* is engaged in or has provided substantial commitment to initiate the active *conduct of a trade or business in the enterprise zone*; and

> (2) at least 25 percent of the *person's* new employees in the enterprise zone are:

>> (A) residents of any enterprise zone in the jurisdiction of the governing body of the enterprise zone; or

>> (B) economically disadvantaged individuals.

> (b) The governing body of an enterprise zone may certify *a franchise or subsidiary* of a new or existing business *as a qualified business* if the franchise or subsidiary:

>> (1) *is located entirely in the enterprise zone*; and

>> (2) *maintains separate books and records of the business activity conducted in the zone.*

*Id.* § 2303.402(a)-(b) (emphasis added). Under subsection (a), a "qualified business" is the "person" conducting or that will conduct its trade or business in the enterprise zone. *See id.* § 2303.402(a). We note that the Act does not define "person." However, the Code Construction Act provides that unless the context in which "person" is used requires a different definition, which it does not here, the term denotes a legal entity: "'Person' includes [a] corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." TEX. GOV'T CODE ANN. § 311.005(2) (Vernon 1998). Under subsection (b), a "franchise"[4] or "subsidiary"[5] of a business — each a discrete and identifiable corporate entity — located entirely within the enterprise zone with separate corporate records of its activity in the zone is also a qualified business. *See* TEX. GOV'T CODE ANN. § 2303.402(b) (Vernon 2000).

Accordingly, based on the plain meaning of the express provisions of the Act as a whole, we conclude that an "enterprise project" is the qualifying business entity located or to be located in an enterprise zone. *See Nat'l Liab. & Fire Ins. Co.*, 43 S.W.3d at 527 (in construing statute, objective is to determine legislative intent from the plain meaning of words used in statute); *Fitzgerald*, 996 S.W.2d at 866 (in determining how legislature intended its words, court looks at entire act). In other words, a single, discrete business in a single enterprise zone constitutes an enterprise project.

Because the Act's limitations apply to the business entity located or to be located in a particular enterprise zone, *i.e.*, the enterprise project, we also conclude that the Department may not allocate to the same business entity in the same enterprise zone more than the maximum number of jobs. Section 2303.407 of the Act provides that the maximum number of jobs the Department may allocate to an "enterprise project" is the lesser of 250 or 110 percent of the "anticipated new permanent jobs or retained jobs." TEX. GOV'T CODE ANN. § 2303.407 (Vernon Supp. 2002). We have concluded that the "enterprise project" is the business entity located or to be located in a particular enterprise zone. Accordingly, the Department may allocate to a single business entity in a single enterprise zone only the maximum number of jobs set out. It follows that the Department may not allocate "additional" jobs to a business entity presently designated as an enterprise project and allocated the maximum job allocation for that particular enterprise zone.

Similarly, the Tax Code limitations apply to the business entity located or to be located in the enterprise zone and preclude the same business entity in the same enterprise zone from receiving more than the maximum job allocation and tax refunds. Under section 151.429 of the Tax Code, a business located in an enterprise zone is limited in the amount of tax refund for which it may apply and receive. An enterprise project may not apply in a fiscal year for more than $250,000 in total tax refunds or receive over the five-year period of its designation as an enterprise project more than $1,250,000 in total tax refunds. *See* TEX. TAX CODE ANN. § 151.429(a)-(b) (Vernon 2002). For the

---

[4]"Franchise," in this context means: "The business or territory controlled by the person or entity that has been granted" the "sole right granted by the owner of a trademark or tradename to engage in business or to sell a good or service in a certain area." BLACKS LAW DICTIONARY 668 (7th ed. 1999).

[5]A "subsidiary corporation" is "[a] corporation in which a parent corporation has a controlling share. — Often shortened to *subsidiary*." *Id.* at 345.

purposes of section 151.429 of the Tax Code, "enterprise project" is "a person designated by the [Department] as an enterprise project under Chapter 2303, Government Code." *Id.* § 151.429(e)(1). We have concluded that the business entity located in the particular enterprise zone is the designated enterprise project under the Act. Accordingly, the business entity is subject in that zone to the $250,000 annual and $1,250,000 five-year sales tax refund limitations. To comply with these limitations, based on the Tax Code's allotment of $5000 per job, *see id.* §151.429(b), a business entity may not be allocated more than 250 jobs in the same enterprise zone. Again, it follows that a business entity that has received the maximum 250-job allocation in an enterprise zone may not, consistent with the Tax Code, receive an additional 250-job allocation for that zone by an "additional concurrent" enterprise project designation.

Finally, we note that because the Act's and the Tax Code's limitations apply to the business entity located or to be located in a particular enterprise zone, *i.e.*, an enterprise project, it follows that the limitations do not apply to that business entity located in a different enterprise zone – a different enterprise project.

A brief submitted on behalf of a business seeking an additional enterprise designation contends that a qualified business may receive concurrent, multiple enterprise designations in the same enterprise zone because the job allocation and tax refund limitations in the Act and the Tax Code expressly apply to an "enterprise project" and not to the "qualified business."[6] We find this argument unpersuasive. The legal premise for this contention, we gather, is that an "enterprise project" is merely an undertaking or "project" of a qualified business. *See* Kiewit Brief, *supra* note 6, at 3-6. Consequently, it is argued, the job allocation and tax refund limits apply only to that undertaking or project and do not limit the jobs and tax benefits allocated to the qualifying *business* as a result of multiple, concurrent designations. *See id.* The brief, however, provides no legal authority for its implicit construction of "enterprise project" as an undertaking or project of a qualified business, and the Act's statutory language does not support it.

The brief also contends that the legislature did not intend the statutory limitations to apply to a qualifying business and limit the jobs allocated and tax refunds granted to the business, citing to statements made in a letter by the legislative sponsor of the 2001 legislation amending the Act regarding the intent of those provisions. *See id.* at 8-9.[7]

We also find this contention unpersuasive. Where the language of the statute is clear, as we believe the language of the Act is, we need not look to extrinsic aids such as legislative history to determine the legislature's intent. *See Fitzgerald,* 996 S.W.2d at 865; *Fleming Foods,* 6 S.W.3d at

---

[6]*See* Memorandum on behalf of Kiewit Offshore Services, Ltd. from Mark W. Eidman, Scott, Douglass & McConnico, L.L.P., to Honorable John Cornyn, Texas Attorney General (June 1, 2002) (on file with Opinion Committee) [hereinafter Kiewit Brief].

[7]*See also* Letter from Honorable Jim Solis, Chair, House Committee on Economic Development, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (May 17, 2002) (on file with Opinion Committee) [hereinafter Solis Letter].

282; *Boykin,* 818 S.W.2d at 785. In interpreting statutes, we "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin,* 818 S.W.2d at 785; Tex. Att'y Gen. Op. No. JC-0027 (1999) at 4. To accomplish this, we must necessarily focus on the literal text of the statute. *See Boykin,* 818 S.W.2d at 785; *see also Fitzgerald,* 996 S.W.2d at 868 ("The Legislature's goal in crafting [a] statute cannot be known except as revealed in its text."). Moreover, the statements proffered by individual legislators after a statute has been enacted do not constitute "legislative history" controlling construction of the Act. "Legislative history includes the enactment history of a statute, that is, actions taken and statements made during legislative consideration." *Lee v. Mitchell,* 23 S.W.3d 209, 213 (Tex. App.–Dallas 2000, pet denied) (citing *Quick v. City of Austin,* 7 S.W.3d 109, 123 (Tex. 1998) (considering, as legislative history, floor debates, committee hearing, and bill analyses)). But "the intent of an individual legislator, even a statute's principal author, is not legislative history controlling the construction to be given a statute." *Gen. Chem. Corp. v. De La Lastra,* 852 S.W.2d 916, 923 (Tex. 1993); *see also In re Doe,* 19 S.W.3d 346, 352 (Tex. 2000) (courts construing statutory language should give little weight to post-enactment statements by legislators; explanations produced, after fact, by individual legislators are not statutory history and can provide little guidance as to what legislature collectively intended). Accordingly, post-enactment statements by legislators are not evidence of legislative intent. *See Blanchette v. Conn. Gen. Ins. Corps.,* 419 U.S. 102, 132 (1974); *State v. United States,* 951 F.2d 645, 650 (5th Cir. 1992); *In re Doe,* 19 S.W.3d at 352; *Gen. Chem. Corp.,* 852 S.W.2d at 923; *Tex. Dept. of Pub. Safety v. Kreipe,* 29 S.W.3d 334, 338 (Tex. App.–Houston [14th Dist.] 2000, pet. denied).

Although the statute's language is unambiguous and does not require us to resort to legislative history, we note that the legislative record does not support a construction contrary to our reading of the Act. *See* OFFICE OF HOUSE BILL ANALYSIS, BILL ANALYSIS, Tex. H.B. 2686, 77th Leg., R.S. (2001).[8] The legislature may, of course, amend the statute if it did not intend for the ceilings on number of jobs allocated and the amount of sales tax refunded to operate as limitations on a qualified business.

---

[8]*See also* Act of May 25, 2001: Hearings on Tex. H.B. 2686 Before the House Comm. on Econ. Dev., 77th Leg., R.S. (Mar. 21, 2001 and Apr. 11, 2001); Act of May 25, 2001: Hearings on Tex. H.B. 2686 Before the Senate Comm. on Fin., 77th Leg., R.S. (May 10, 2001); Act of May 24, 2001: Hearings on Tex. H.B. 820 Before the House Comm. on Econ. Dev., 77th Leg., R.S. (Mar. 7, 2001 and Mar. 21, 2001); Act of May 24, 2001: Hearings on Tex. H.B. 820 Before the Senate Comm. on Intergovernmental Relations, 77th Leg., R.S. (May 9, 2001); Act of Apr. 25, 1995: Hearings on Tex. S.B. 959 Before the Senate Comm. on Administration, 74th Leg., R.S. (Mar. 22, 1995); Act of Apr. 25, 1995: Hearings on Tex. S.B. 959 Before the House Comm. on State Affairs, 74th Leg., R.S. (Apr. 10, 1995); Act of May 27, 1995: Hearings on Tex. H.B. 2065 Before the House Comm. on Econ. Dev., 74th Leg., R.S. (Apr. 3, 1995); Act of May 27, 1995: Hearings on Tex. H.B. 2065 Before the Senate Comm. on Econ. Dev., 74th Leg., R.S. (May 19, 1995 and May 23, 1995); Act of May 26, 1993: Hearings on Tex. S.B. 405 Before the Senate Comm. on Econ. Dev., 73d Leg., R.S. (Mar. 16, 1993); Act of May 26, 1993: Hearings on Tex. S.B. 405 Before the House Comm. on Econ. Dev., 73d Leg., R.S. (Apr. 28, 1993) (tapes available at Lorenzo De Zavala State Archives, House Video/Audio Dep't and Senate Staff Services).

## S U M M A R Y

Under chapter 2303 of the Government Code and section 151.429 of the Tax Code, a business entity located in an enterprise zone and presently designated an "enterprise project" and allocated the maximum jobs and related tax benefits may not receive an additional and concurrent enterprise project designation in the same enterprise zone and an additional maximum job allocation and the related tax benefits.

Very truly yours,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee